**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | | |
| DESIREE MORRIS, individually and as a representative of putative classes, | : | **Civil Case No.: 2:11-cv-00474-DSC** |
| | : | |
| | : | **Judge David Stewart Cercone** |
| Plaintiff, | : | |
| | : | **ELECTRONICALLY FILED** |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., and WELLS FARGO HOME MORTGAGE, INC. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

NICHOLS KASTER, PLLP
Charles G. Frohman, MN Bar No. 0386695
(admitted to practice in W.D.Pa.)
Paul J. Lukas, MN Bar No. 22084X*
E. Michelle Drake, MN Bar No. 0387366*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email:  frohman@nka.com
           lukas@nka.com
           drake@nka.com
           krichter@nka.com
           bailey@nka.com
*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES

July 11, 2011

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ...........................................................................................1

FACTUAL BACKGROUND ............................................................................2

ARGUMENT...................................................................................................4

   I.    PLAINTIFF HAS STATED A VALID CLAIM FOR BREACH OF CONTRACT ..........4

       A.  The Same Contract Claim Was Upheld by the Pennsylvania Court in *Wulf* ............4

       B.  This Court Also Should Allow Plaintiff's Contract Claim to Proceed .....................5

          1. The Flood Insurance Provision in the Mortgage is Controlling .................6

          2. The *Hazard* Insurance Provision Does Not Apply to *Flood* Insurance ......6

          3. Even if the Hazard Insurance Provision Applies, the Amount of Coverage Required under this Provision Is No Greater than the Amount of Coverage Required under the Flood Insurance Provision ...........................................8

          4. To the Extent that the Hazard Insurance Provision Applies to Flood Insurance and Requires More Coverage than the Flood Insurance Provision, the "Conflict" Must Be Resolved in Favor of Plaintiff..............9

          5.  Even Standing Alone, the Hazard Insurance Provision Does Not Allow Wells Fargo to Impose Unfair Flood Insurance Requirements .................10

  II.   PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD BE CONSIDERED AS PART OF HER BREACH OF CONTRACT CLAIM ....................................................................................13

  III.  PLAINTIFF HAS STATED A VALID TILA CLAIM ...................................13

       A.  Wells Fargo's Conduct Violated the TILA ............................................13

ii

      1.  Wells Fargo Violated the TILA by Misrepresenting the Terms of the

         Legal Obligation Between the Parties ........................................................14

      2.  Wells Fargo Violated the TILA by Failing to Provide Plaintiff with New

         Credit Disclosures ...................................................................................15

    B.  Wells Fargo's "Defenses" to Plaintiff's TILA Claim Lack Merit ..........................16

IV.  PLAINTIFF HAS STATED A VALID RESPA CLAIM...................................................17

V.  PLAINTIFF HAS STATED A VALID BREACH OF FIDUCIARY DUTY CLAIM.....20

VI.  PLAINTIFF HAS STATED A VALID UNJUST ENRICHMENT CLAIM...................22

VII.  PLAINTIFF HAS STATED A VALID PENNSYLVANIA CONSUMER PROTECTION

    CLAIM................................................................................................................................24

**CONCLUSION** ............................................................................................................................**25**

<h1 style="text-align:center"><u>TABLE OF AUTHORITIES</u></h1>

**CASES**

*A.G. Cullen Const., Inc. v. State Sys. of Higher Ed.,* 898 A.2d 1145 (Pa. Commw. Ct. 2006) ......9

*Am. Bankers Ins. Co. of Florida v. Wells*, 819 So. 2d 1196 (Miss. 2001) ....................................12

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998) .......................................................................14

*Bermudez v. First of Am. Bank Champion, N.A.*, 860 F.Supp. 580 (N.D. Ill. 1994) ...................16

*Bloom v. Martin,* 77 F.3d 318 (9th Cir.1996) ........................................................................19, 20

*Bohler-Uddenholm Amer. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001) .........................24

*Borrelli v. Metal Traders, Inc.*, 2008 WL 2914795 (W.D. Pa. July 24, 2008)............................10

*Brunwasser v. U.S.*, 2008 WL 5216253 (W.D. Pa. Dec. 11, 2008) .............................................23

*Buchanan v. Brentwood Fed. Sav. & Loan Ass'n*, 320 A.2d 117 (Pa. 1974) ........................20, 21

*Buchanan v. Century Fed. Sav. & Loan Ass'n of Pittsburgh*, 542 A.2d 117
(Pa. Super. Ct. 1988) ....................................................................................................................20

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. Ct. 1999) ....................................11

*Cortez v. Keystone Bank, Inc.*, 2000 WL 536666 (E.D.Pa. May 2, 2000) ...................................19

*Custer v. Homeside Lending*, 858 So. 2d 233 (Ala. 2003) ...........................................................12

*Davis v. Allstate Ins. Co.*, 2009 WL 122761 (E.D. La. Jan. 15, 2009) .......................................7, 8

*Demando v. Morris*, 206 F.3d 1300 (9th Cir. 2000) .....................................................................14

*Dinger v. Allfirst Fin., Inc.*, 82 Fed. Appx. 261 (3d Cir. 2003) ..................................................21

*Donahue v. Fed. Exp. Corp.*, 753 A.2d 238 (Pa. Super. Ct. 2000) ..............................................11

*Flagg v. Yonkers Sav. & Loan Ass'n*, 370 F. Supp. 2d 565 (S.D.N.Y. 2004) .............................19

*Girard Trust Co. v. City of Philadelphia*, 87 A.2d 277 (Pa. 1952) .............................................12

*Goldman v First Nat'l Bank*, 532 F.2d 10 (7th Cir. 1976) ..........................................................17

*Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010) ............................1

*Haines v. State Auto Prop. & Cas. Ins. Co.*, 2010 WL 1257982 (E.D. Pa. Mar. 25, 2010) ..........9

*Hayes v. Wells Fargo Home Mortg.*, 2006 WL 3193743 (E.D. La. Oct. 31, 2006) ....................12

*Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010) ............. *passim*

*Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) .......2, 23

*Howard Sav. Bank v. Cohen*, 607 A.2d 1077 (Pa. Super. Ct. 1992) ...........................................10

*Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75 (9th Cir. 1996) ........................................................14

*In re Andrews*, 78 B.R. 78 (Bankr. E.D. Pa. 1987) .....................................................................10

iv

*In re Fowler*, 425 B.R. 157 (Bkrtcy. E.D. Pa. 2010) ............................................................24, 25

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ...............................................8

*In re Smith*, 866 F.2d 576 (3d Cir. 1989) ...................................................................................11

*Kay v. Wells Fargo & Co.,* 247 F.R.D. 572 (N.D. Cal.2007) .......................................................20

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994) ...............................................21

*Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221 (3d Cir. 1987) .............................................23

*Mercy Health Sys. of Southeast Penn. v. Metro. Partners Realty, LLC*, 2003 WL 21904583
(Pa. Ct. Com. Pl. July 10, 2003) ..................................................................................................22

*Motley v. Homecomings Financial, LLC*, 557 F. Supp. 2d 1005 (D. Minn. 2008) .....................15

*Munoz v. PHH Corp.*, 659 F. Supp. 2d 1094 (E.D. Cal. 2009) ...................................................20

*New Castle Cty. v. Nat'l Union Fire Ins. Co.,* 174 F.3d 338 (3d Cir.1999) ..................................7

*Norris v. Union Planters Bank*, 739 So. 2d 869 (La. Ct. App. 1999) ..........................................12

*NutriSystem, Inc. v. Nat'l Fire Ins. Of Hartford*, 2004 WL 2646598
(E.D. Pa. Nov. 19, 2004) ..............................................................................................................24

*O'Neill v. Sovereign Bank*, 1998 WL 1543498 (Pa. Ct. Comm. Pl. Dec. 15, 1998) ...................21

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ......................................................4

*Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499 (3d Cir.1998) ...........................................13

*Raneri v. Inn Am. of Pennsylvania, Inc.* 29 Pa. D. & C.3d 239 (Pa. Ct. Com. Pl. 1984) .......10, 12

*Rossman v. Fleet Bank, N.A.*, 280 F.3d 384 (3d Cir. 2002)....................................................13, 14

*Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880 (Pa. Super. 2006) ..................................................23

*Smith v. John Hancock*, 2008 WL 4072585 (E.D. Pa. Sept. 2, 2008) .........................................25

*Somers v. Somers*, 613 A.2d 1211 (Pa. Super. Ct. 1992) ............................................................11

*Temple Univ. Hosp., Inc. v. Group Health, Inc.*, 2006 WL 146426 (E.D. Pa. Jan. 12, 2006) ......11

*Travis v. Boulevard Bank, N.A.*, 880 F.Supp. 1226 (N.D. Ill. 1995) ...............................14, 15, 16

*Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740
(N.D. Ind. Mar. 16, 2006) ...............................................................................................15, 21, 23

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) .......................................................24

*Western Pennsylvania Nat. Bank v. Peoples Union Trust & Co.*, 266 A.2d 773 (Pa. 1970) ........10

*Wulf v. Bank of Am., N.A.*, 2011 WL 2550853 (E.D. Pa. Apr. 15, 2011) ........................... *passim*

*Wulf v. Bank of Am., N.A.*, 2011 WL 2550628 (E.D.Pa. June 27, 2011) ............................ *passim*

**STATUTES**

12 U.S.C. § 2601(b)(2) ..................................................................................................17

12 U.S.C. § 2601(b)(3) ..................................................................................................19

12 U.S.C. § 2602(3) .......................................................................................................19

12 U.S.C. § 2607 ............................................................................................................23

12 U.S.C. § 2607(a) .......................................................................................................17

12 U.S.C. § 2607(b) .......................................................................................................17

15 U.S.C. § 1601(a) .......................................................................................................14

42 U.S.C. § 4012a(b)(1) ..................................................................................................2

42 U.S.C. § 4012(e)(2) ..................................................................................................23

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463, 2010 U.S.C.C.A.N. (124 Stat.) 1376 .....................................................................19, 23

**REGULATIONS AND RULES**

12 C.F.R. § 22.3 ............................................................................................................23

12 C.F.R. § 226.17(c) ...............................................................................................14, 15

12 C.F.R. § 226.17(c)(1) ...............................................................................................14

12 C.F.R. § 226.18 .........................................................................................................15

12 C.F.R. § 226.5(c) ......................................................................................................15

12 C.F.R. § 226.9(c) ......................................................................................................15

12 C.F.R. pt. 226, Supp. I, § 17(c), cmt. 2 ....................................................................15

22 C.F.R. § 203.16a(c) ................................................................................................3, 6

24 C.F.R. § 3500.2 ...............................................................................................7, 18, 19

**SECONDARY SOURCES**

www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm................................6

http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/environment/review/qa/floodinsurance...............................................................................................................7

## INTRODUCTION

This case provides the latest example of the type of abusive banking practices that Wells Fargo has adopted to generate fee income for itself at the expense of its customers.[1]  When Plaintiff Desiree Morris ("Plaintiff"), a first-time home buyer, took out a mortgage loan with her local bank, Victorian Finance, she was required to obtain flood insurance in the amount of her principal balance, and did so.   However, ten months after Plaintiff's note was acquired by Defendants Wells Fargo Bank, N.A. ("Wells Bank") and Wells Fargo Home Mortgage ("Wells Mortgage") (collectively, "Defendants" or "Wells Fargo"), the rules changed.  Suddenly, Wells Fargo claimed that her existing level of flood insurance was "less than the coverage required," and demanded that she increase her coverage to an amount almost $100,000 in excess of her principal balance, even though Plaintiff's existing level of coverage already satisfied the requirements of the National Flood Insurance Act ("NFIA") and the terms of her FHA mortgage. A short time later, Wells Fargo unilaterally seized funds from her escrow account to purchase a "force-placed" flood insurance policy for her, through one of its affiliates at an above-market premium, and took a commission for itself in the process.

Based on this conduct, Plaintiff asserts claims against Defendants for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of the Truth-In-Lending Act ("TILA"); (4) violation of the Real Estate Settlement Procedures Act ("RESPA"); (5) breach of fiduciary duty; (6) unjust enrichment; and (7) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PAUTP-CPL).  This Court should deny Wells Fargo's motion to dismiss these claims, as other courts have done in similar cases.

---

[1] In August of 2010, Wells Fargo was ordered to pay more than $200 million in restitution to its customers, following a trial in which the court found that Wells Fargo had unfairly and deceptively "manipulated" customers' bank accounts to drive up overdraft fees. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).

In a pair of recent decisions, the Eastern District of Pennsylvania declined to dismiss almost identical breach of contract and TILA claims, brought by a Pennsylvania borrower with the same FHA mortgage contract as Plaintiff Morris.  *See Wulf v. Bank of Am., N.A.*, No. 10-5176, 2011 WL 2550853 (E.D. Pa. Apr. 15, 2011) ("*Wulf I*") (Exhibit 1); *Wulf v. Bank of Am., N.A.*, No. 10-5176, 2011 WL 2550628 (E.D. Pa. June 27, 2011) ("*Wulf II*") (Exhibit 2). Moreover, in a separate case, the court declined to dismiss a similar TILA claim against JPMorgan Chase Bank, and certified a nationwide class of borrowers based on that claim.  *See Hofstetter v. Chase Home Finance, LLC*, 751 F. Supp. 2d 1116 (N.D. Cal. 2010) ("*Hofstetter I*"); *Hofstetter v. Chase Home Finance, LLC*, No. C 10-01313 WHA, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ("*Hofstetter II*").  Although these cases did not address Plaintiff's RESPA, breach of fiduciary duty, or unjust enrichment claims, those claims are also well-grounded in law, for the reasons explained below.[2]  Accordingly, Plaintiff respectfully requests that the Court deny Wells Fargo's motion to dismiss.

## FACTUAL BACKGROUND

On November 24, 2009, Plaintiff obtained a mortgage loan in the amount of $115,371 from Victorian Finance, LLC ("Victorian Finance").  *Complaint, ¶ 15*.  Because Plaintiff's home is located in a "Special Flood Hazard Area" ("SFHA"), federal law requires her to maintain flood insurance as a condition of this loan.  *Id., ¶ 16*.  Under the NFIA, the amount of flood insurance must be "***at least equal to the outstanding principal balance of the loan*** or the maximum limit of coverage made available under the Act, ***whichever is less***."  *Id., ¶ 16* (*citing* 42 U.S.C. § 4012a(b)(1) (emphasis added)).

---

[2] The court in *Wulf I* dismissed the PAUTP-CPL claim in that case.  However, Morris' PAUTP-CPL claim is distinguishable, as it is based on additional grounds that were not alleged in *Wulf*, were not addressed by the court in that case, and are not subject to the economic loss doctrine or the gist of the action doctrine.

Plaintiff's mortgage does not require additional flood insurance.  *Id., ¶ 30(a).*  Under Paragraph 4 of her mortgage, Plaintiff is required to insure the property "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD").  *Id., ¶ 17.* HUD, in turn, provides the following guidance to borrowers:

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

*Id*; *accord*, 22 C.F.R. § 203.16a(c).

Consistent with the NFIA and the terms of her mortgage, Plaintiff obtained $118,000 worth of flood insurance coverage upon originating her mortgage loan (slightly more than her principal balance).  Victorian Finance deemed this amount of coverage to be adequate during the time that it held Plaintiff's note.  *Id, ¶¶ 18, 30(d).*  Moreover, Wells Fargo deemed this coverage amount to be adequate at the time it acquired Plaintiff's mortgage in February 2010.  *Id., ¶ 18.*

Wells Fargo held and serviced Plaintiff's mortgage for ten months without ever claiming that Plaintiff's flood insurance was inadequate.  *Id., ¶ 30(e).*  However, on December 9, 2010, Wells Fargo suddenly sent Plaintiff a form letter, contending that her flood insurance coverage was "less than the coverage required[.]"  *Id., ¶ 20.*  According to this form letter, Plaintiff was required to "provide replacement cost coverage" for her home, subject to the National Flood Insurance Program ("NFIP") limit of $250,000.  *Id.*[3]  In the same form letter, Wells Fargo informed Plaintiff that if she did not obtain additional flood insurance coverage, Wells Fargo would force-place additional coverage on her property at her expense.  *Id, ¶ 22.*  In addition, Wells Fargo stated that: (1) this lender-placed flood insurance coverage would be arranged through Wells Fargo Insurance, Inc., "an affiliate of Wells Fargo Bank, N.A."; (2) "Wells Fargo

---

[3] Notably, Wells Fargo did not explain why the amount of flood insurance that Plaintiff previously had carried was no longer adequate under federal law and/or Plaintiff's mortgage.  *Id.*

Bank, N.A. will be compensated" in connection with this lender-placed insurance; and (3) "In nearly all instances, the additional flood insurance coverage you purchase from an agent or insurance company of your choice will be less costly than the coverage purchased by Wells Fargo Home Mortgage." *Id.*

After sending Plaintiff this letter, Wells Fargo sent Plaintiff a second form letter dated February 8, 2011. *Id, ¶ 23.* This form letter claimed that "we have not received evidence of adequate flood insurance for your property" (*id., ¶ 24*), and notified Plaintiff that Wells Fargo had unilaterally purchased $94,000 worth of additional flood insurance at her expense. *Id., ¶ 25.* Wells Fargo indicated that the cost of this insurance was $893, and further indicated that "the premium cost for this additional coverage will be charged to your escrow account. *Id.*

The following month, Wells Fargo cancelled this coverage without explanation, and purchased replacement coverage in the amount of $82,200. *Id., ¶¶ 26-28.* The cost of this replacement coverage was $780.90, and also was charged to Plaintiff's escrow account." *Id., ¶ 28.* To date, Wells Fargo has not refunded these charges.

## ARGUMENT

## I.     Plaintiff Has Stated a Valid Claim for Breach of Contract

Based on these facts, Plaintiff clearly has stated a valid breach of contract claim against Wells Fargo.[4] Plaintiff's claim is identical to the breach of contract claim that the court upheld in *Wulf I and II*, and there is no reason to depart from the reasoning of those decisions here.

### A.     The Same Contract Claim Was Upheld by the Pennsylvania Court in *Wulf*

The *Wulf* case – which Wells Fargo entirely ignores in its brief – is directly on point. Just as in the present case, *Wulf* also involved (1) a Pennsylvania borrower (2) asserting a claim in a

---

[4]At this stage, the Court must construe the Complaint in the light most favorable to Plaintiff, accept all factual allegations as true, and draw all reasonable inferences in her favor. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Pennsylvania forum (3) for breach of an FHA mortgage contract (4) based on a bank requiring flood insurance in excess of both the principal balance and the amount required at origination.  In that case, the mortgage at issue contained an identical flood insurance provision providing for flood insurance "to the extent required by the Secretary."  *Wulf I*, 2011 WL 2550853, at *3. Based on this mortgage language, United States Magistrate Judge Elizabeth T. Hey held that the plaintiff stated a valid claim that the bank breached the mortgage contract by requiring him to insure his property in excess of his principal balance, where such coverage was not required upon origination of his mortgage loan.  *Id.* at *5.

On appeal to the district court, the Honorable Mary A. McLaughlin affirmed this ruling in *Wulf II*.  According to Judge McLaughlin, "one could interpret the phrase to the extent 'required' by the Secretary to refer to the minimum [federal standard], which would be the outstanding principal balance of the loan."  *Wulf II*, 2011 WL 2550628, at *1.  Thus, two Pennsylvania judges have now examined the same FHA mortgage language, and have held that it supports a claim for breach of contract where a bank requires flood insurance in excess of the borrower's principal balance.

**B.     This Court Also Should Allow Plaintiff's Contract Claim to Proceed**

This Court should reach the same result as in *Wulf*, based on the plain language of the mortgage and the course of dealing between the parties.  To hold otherwise would render the flood insurance language of Plaintiff's mortgage contract superfluous, confuse general hazard insurance with flood insurance, and violate several fundamental canons of contract interpretation (e.g., specific contract provisions control over general provisions, ambiguities must be resolved against the drafter, mortgage contracts must be strictly construed, etc.).  Moreover, Wells Fargo's interpretation ignores the implied covenant of good faith and fair dealing that is incorporated into all contracts under Pennsylvania law.

### 1.   The Flood Insurance Provision in the Mortgage Is Controlling

The only reference to *flood* insurance in Plaintiff's mortgage is the following sentence, which incorporates HUD's flood insurance requirements into the mortgage:

> Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary [of HUD].

*Complaint, ¶ 17; Defs' Ex. 2, ¶ 4*.  As noted above, HUD does not require flood insurance in excess of a borrower's principal balance.  HUD's regulations provide that "flood insurance must be maintained . . . in an amount at least equal to either the *outstanding balance of the mortgage*, less estimated land costs, or the maximum amount of the NFIP insurance available with respect to the property improvements, *whichever is less*."  24 C.F.R. § 203.16a(c) (emphasis added).  Moreover, HUD explicitly states on its website that "[f]or loans . . . , the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan. *Complaint, ¶ 17* (citing www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm).  Thus, there is no inconsistency between HUD's regulations and its summary of those regulations on its website.

Although Wells Fargo argues that HUD does not "prohibit" lenders from demanding flood insurance coverage in excess of a borrower's principal balance (*Defs' Memo at 16*), this argument misses the point.  The relevant question is not what HUD prohibits, but what it "requires," because Plaintiff only was obligated insure the property against loss by floods to the extent *required* by HUD.  *See Wulf II*, 2011 WL 2550628, at *1.  Based on HUD's flood insurance requirements (which were incorporated into the mortgage), it is clear that Plaintiff was not required to carry flood insurance in excess of her principal balance.

### 2.   The *Hazard* Insurance Provision Does Not Apply to *Flood* Insurance

Instead of focusing on the flood insurance provision in the mortgage, Wells Fargo relies on a separate provision relating to *hazard* insurance:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires.

*Defs' Memo at 13* & *Defs' Ex. 2, ¶ 4*.  However, as the court noted in *Wulf*, "[i]t is far from clear that this [provision] refers to flood insurance." *Wulf I*, 2011 WL 2550853, at *4.  In fact, there would have been no need to include a separate flood insurance provision in the mortgage if the hazard insurance provision already addressed the amount of flood insurance that was required. *See New Castle Cnty. v. Nat'l Union Fire Ins. Co.,* 174 F.3d 338, 349 (3d Cir.1999) ("[T]his Court takes care not to render other portions of a provision or contract superfluous when construing contract language.").

General hazard insurance (also known as homeowner's insurance) is different from flood insurance, and covers different types of losses (e.g., losses due to fire or wind damage).  As HUD explains on the same section of its website that addresses flood insurance requirements:

> **Question**:
> Doesn't the homeowner property casualty insurance cover financial loss due to flooding damage?
>
> **Answer**:
> Generally, homeowner and other property casualty insurance policies do not provide coverage for potential financial loss that may be caused by flooding damage.

http://portal.hud.gov/hudportal/HUD?src=/program_offices/comm_planning/environment/review/qa/floodinsurance (last visited July 11, 2011).  For this reason, HUD regulations refer separately to flood insurance and hazard insurance.  *See* 24 C.F.R. § 3500.2 (defining "settlement service" to include "[p]rovision of services involving hazard, flood, or other casualty insurance").

Several cases further underscore this distinction between general hazard insurance and flood insurance.  *See e.g., Davis v. Allstate Ins. Co.*, No. 07-4572, 2009 WL 122761, at *2 (E.D.

La. Jan. 15, 2009) ("There is no dispute that damage from flood is excluded under the homeowner's policy. Because there is no coverage for damage from flood under the homeowner's policy, both policies of insurance do not cover the same loss."); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 220-21 (5th Cir. 2007).   Indeed, the very fact that flood losses are not covered by standard hazard insurance policies is what caused the federal government to establish a separate National Flood Insurance Program.   Accordingly, the hazard insurance provision has no bearing on the amount of flood insurance that is required.

The language of the contract further supports this interpretation. After describing Plaintiff's hazard insurance obligations, the contract states that "Borrower shall ***also*** . . . insure against loss by floods." *Defs' Ex. 2, ¶ 4* (emphasis added).   The use of the word "also" clearly indicates that flood insurance is required in addition to, and not as a subset of, hazard insurance.

> **3.      Even if the Hazard Insurance Provision Applies, the Amount of Coverage Required under this Provision Is No Greater than the Amount of Coverage Required under the Flood Insurance Provision**

Even if this Court were to consider the vague language of the hazard insurance provision ("in the amounts and for the periods that Lender requires"), this provision still would not justify Wells Fargo's conduct, since the amount of insurance "that lender require[d]" was no greater than the amount of insurance that HUD required.   This is clear from the course of dealing between the parties, both at and after closing.   At the time Plaintiff originated her mortgage, she obtained flood insurance coverage in the amount of $118,000, approximately the same amount as her outstanding principal balance.   Her lender at that time (Victorian Finance) regarded this amount of coverage as sufficient, and set up Plaintiff's escrow account accordingly.   When Wells Fargo later acquired Plaintiff's mortgage, it was aware (or should have been aware) of the amount of flood insurance that Victorian Finance required, and gave no indication at that time that the existing amount of flood insurance was inadequate.   Moreover, Wells Fargo held and

serviced Plaintiff's mortgage for at least ten months before determining that her coverage was "less than the coverage required." This course of conduct further demonstrates that Plaintiff's existing level of coverage was sufficient to satisfy the requirements of her mortgage.

Notably, Plaintiff's mortgage does ***not*** state that the lender's insurance requirements can change during the term of the loan. In this regard, Plaintiff's Mortgage differs significantly from the current Fannie Mae/Freddie Mac Single Family Uniform Instrument for Pennsylvania, which states: "What Lender requires pursuant to the preceding sentences [relating to insurance] can change during the term of the Loan." *See Exhibit 3, ¶ 5.*

> **4.**    **To the Extent that the Hazard Insurance Provision Applies to Flood Insurance and Requires More Coverage than the Flood Insurance Provision, the "Conflict" Must Be Resolved in Favor of Plaintiff**

Even if the Court were to find that the hazard insurance provision applies to flood insurance and requires more flood insurance than necessary to cover Plaintiff's principal balance (neither of which are true), the Court still would have to make a third leap before granting Wells Fargo's Motion to Dismiss. Specifically, the Court would have to find that any "conflict" between the flood insurance provision and the hazard provision must be resolved in favor of Wells Fargo. This would violate at least four fundamental principles of contract construction.

First, "[i]t is a basic rule of contract construction that when there is a conflict between a specific provision and a general provision, the specific contract provision prevails." *Haines v. State Auto Prop. & Cas. Ins. Co*., No. 08-cv-5715, 2010 WL 1257982, at *5 (E.D. Pa. Mar. 25, 2010) (citing *A.G. Cullen Const., Inc. v. State Sys. of Higher Ed.,* 898 A.2d 1145, 1169 (Pa. Commw. Ct. 2006)). Here, the flood insurance provision is more specific to the parties' flood insurance dispute than the general hazard insurance provision. Therefore, the flood insurance provision prevails.

Second, mortgage contracts are formal documents of a particular character that must be "strictly construed."  *Western Pennsylvania Nat'l Bank v. Peoples Union Trust & Co.*, 266 A.2d 773, 775 (Pa. 1970); *Raneri v. Inn Am. of Pennsylvania, Inc.* 29 Pa. D. & C.3d 239, 241 (Pa. Ct. Com. Pl. 1984).  Accordingly, Wells Fargo is limited to those rights that are ***specifically*** granted to it in the mortgage contract.  *See Western Pennsylvania Nat'l Bank*, 266 A.2d at 775.

Third, "if the language of the contract is ambiguous and unclear, a written agreement is to be construed against its drafter, which in this case is the bank."  *Howard Sav. Bank v. Cohen*, 607 A.2d 1077, 1081 (Pa. Super. Ct. 1992).  This principle applies with equal force to assignees under a mortgage.  *See In re Andrews*, 78 B.R. 78, 81 (Bankr. E.D. Pa. 1987) ("Since the Mortgagee, as an assignee, steps into the shoes of . . . the drafter of the adhesion contract, the admitted ambiguity in the foregoing passages must be construed against the Mortgagee.").

Finally, on a dispositive motion, "all inferences based upon the available documents shall be drawn in favor of the nonmoving party." *Borrelli v. Metal Traders, Inc.*, 2008 WL 2914795, at *6 (W.D. Pa. July 24, 2008).  Therefore, it would be especially inappropriate, at this stage, to resolve the language of the mortgage contract in favor of Wells Fargo (the moving party).

### 5. Even Standing Alone, the Hazard Insurance Provision Does Not Allow Wells Fargo to Impose Unfair Flood Insurance Requirements

Finally, even if this Court were to completely disregard the language of the flood insurance provision and exclusively consider the language of the hazard insurance provision (which would be a clear error of law), the hazard insurance provision is not a blank check that authorizes Wells Fargo to demand excessive amounts of flood insurance.  As the court recognized in *Wulf*, any discretionary authority granted to the lender by this provision is subject to an implied duty of good faith and fair dealing.  *See Wulf I*, 2011 WL 2550853, at *5-6.

10

"Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement."  *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000); *accord*, *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992). This duty applies with special force to mortgage contracts where a borrower is largely at the mercy of his or her lender.  As the Third Circuit has explained:

> A borrower of money, especially the owner of a residential property mortgaged to a lending institution, may reasonably expect that he or she will receive fair and above-board treatment in their dealings and that no undue advantage will be taken by the lender.

*In re Smith*, 866 F.2d 576, 584 (3d Cir. 1989); *see also CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1059 (Pa. Super. Ct. 1999) (declining to dismiss good faith and fair dealing claim against bank where bank's actions were inconsistent with parties' prior course of dealing).

Examples of bad faith that violate this duty include "evasion of the spirit of the bargain, . . . ***abuse of a power to specify terms***, and interference with or failure to cooperate in the other party's performance."  *Temple Univ. Hosp., Inc. v. Group Health, Inc.*, No. 05-102, 2006 WL 146426, at *5 (E.D. Pa. Jan. 12, 2006) (emphasis added).  In particular, "[u]ndisclosed, inflated charges . . . may be an abuse of a power to specify terms."  *Id*.  Thus, the Third Circuit has specifically held that "imposing additional and unnecessary costs and expenses" on a borrower is an "unfair" practice that violates this duty.  *In re Smith*, 866 F.2d at 584-585.

Here, Wells Fargo breached its duty of good faith and fair dealing by demanding more flood insurance than was necessary to protect its financial interests and comply with federal law. *See Hofstetter I*, 751 F. Supp. 2d at 1129-30.  In *Hofstetter*, the court interpreted a mortgage agreement that contained an insurance provision that expressly applied to ***both*** flood insurance and hazard insurance.  *Id.* at 1127.  Similar to the hazard-only provision in this case, the relevant provision in *Hofstetter* also contained vague language providing that insurance "shall be

11

maintained in the amounts and for the periods that we require." *Id*. However, the court held that this language did not afford the bank the right to change its requirements after-the-fact and demand more coverage than was necessary to protect its interests. *Id.* at 1127.[5]

In *Wulf I*, the court held that *Hofstetter* favors Plaintiff's reading of the contract to "set a limit on the flood insurance a lender may require."   *Wulf I*, 2011 WL 2550853, at *5, n.6. Moreover, Pennsylvania courts have "long held" that a lender's rights under a mortgage covenant are limited by the extent of the underlying mortgage obligation:

> Pennsylvania law has long held that a mortgage is merely collateral for the payment of some primary obligation, usually a bond. *Girard Trust Co. v. City of Philadelphia*, 369 Pa. 499, 87 A.2d 277 (1952). Further, an express covenant in a mortgage is merely ancillary to and in support of that primary obligation and its function is to furnish collateral security for the performance of the terms of that obligation.  *Girard*, *supra*, 369 Pa. at 503. Therefore, the covenant contained in the mortgage . . . is merely to furnish collateral security for the performance of the underlying debt and has no independent existence apart from being collateral for the underlying debt.

*Raneri*, 29 Pa. D. & C.3d at 240-41.   Thus, whatever discretion Wells Fargo had under the mortgage, it did not have discretion to change Plaintiff's flood insurance requirements after-the-fact and demand more coverage than was necessary to secure the underlying debt.[6]

---

[5] Numerous other courts also have reached similar results.  *See Norris v. Union Planters Bank*, 739 So. 2d 869, 873-74 (La. Ct. App. 1999) (bank may not force-place flood insurance in excess of borrower's principal balance); *Am. Bankers Ins. Co. of Florida v. Wells*, 819 So. 2d 1196, 1204 (Miss. 2001) (plaintiff stated valid claim against lender for breach of duty of good faith and fair dealing, where lender charged customers hazard insurance premiums "based upon the gross amount of the loan . . . as opposed to the net payoff of the loan on the date of force placement").

[6] The case law cited by Wells Fargo is not controlling and is distinguishable.  *See Defs' Memo at 17* (citing *Custer v. Homeside Lending*, 858 So. 2d 233 (Ala. 2003); *Hayes v. Wells Fargo Home Mortg.*, 2006 WL 3193743 (E.D. La. Oct. 31, 2006)).   Neither *Hayes* nor *Custer* involved situations where there was a separate flood insurance provision in the mortgage that adopted HUD's flood insurance requirements.  Moreover, the mortgage agreement in *Hayes* specifically stated that "[w]hat Lender requires . . .  can change during the term of the Loan." *Hayes*, 2006 WL 3193743, at *2.  Plaintiff's mortgage contains no such language.  Therefore, *Hayes* is also distinguishable for this reason.  *See Wulf I*, 2011 WL 2550853, at *5 n.7 (distinguishing *Hayes*); *accord Hofstetter I*, 751 F. Supp. 2d at 1127 (noting that Chase failed to reserve the right to change its flood insurance requirements in its deed of trust with borrower).

**II.      Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Should Be Considered as Part of Her Breach of Contract Claim**

Although Wells Fargo argues that there is "not an independent cause of action" for breach of the implied covenant of good faith and fair dealing, this does not render the covenant unenforceable. Rather, it means that Plaintiff's claim for breach of the covenant of good faith and fair dealing should be considered as part of her breach of contract claim. This is precisely the approach adopted by the court in *Wulf*. In that case, the plaintiff pled separate claims for breach of contract and breach of the covenant of good faith and fair dealing. The court ruled that these two claims should be construed together, and incorporated the claim for breach of the covenant of good faith and fair dealing into the breach of contract claim. *Wulf I*, 2011 WL 2550853, at \*5-6; *Wulf II*, 2011 WL 2550628, at \*1. The same approach should be adopted here.

**III.     Plaintiff Has Stated a Valid TILA Claim**

**A.      Wells Fargo's Conduct Violated the TILA**

Plaintiff also has stated a valid TILA claim against Wells Fargo. In her Complaint, Plaintiff alleges that Wells Fargo violated the TILA by (1) misrepresenting the amount of flood insurance that was required; (2) adversely changing the terms of Plaintiff's mortgage loan after-the-fact; and (3) failing to give proper notice that Wells Fargo was amending the loan terms and failing to obtain consent to the amended terms. *See Complaint, ¶¶ 47-48.* These allegations are virtually identical to the allegations in *Wulf* and *Hofstetter*, which were held to be sufficient to state a TILA claim in those cases. *See Wulf I*, 2011 WL 2550853, at \*8-11; *Hofstetter I*, 751 F. Supp. 2d at 1123-28. Accordingly, Plaintiff also should be allowed to pursue her TILA claim.[7]

---

[7] TILA is a remedial consumer protection statute that "should be construed liberally in favor of the consumer." *Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002) (quoting *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir.1998)).

### 1.    Wells Fargo Violated the TILA by Misrepresenting the Terms of the Legal Obligation Between the Parties

The most fundamental requirement of the Truth-in-Lending Act – as the name of the Act implies – is to provide borrowers with clear and accurate disclosures of loan terms.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see also Rossman v. Fleet Bank, N.A.*, 280 F.3d 384, 393 (3d Cir. 2002) ("TILA prohibits not only failures to disclose, but false or misleading disclosures"); 12 C.F.R. § 226.17(c)(1) ("The disclosures shall reflect the terms of the legal obligation between the parties.").  This duty to make truthful and accurate disclosures is an ongoing duty, and applies to ***both*** subsequent disclosures and initial disclosures at the time of the transaction.  *See Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 & n.7 (9th Cir. 1996) (rejecting defendant's argument that 12 C.F.R. § 226.17(c) "only applies to disclosures before consummation of the transaction").  Thus, where a creditor sends out notices, after the date of the transaction, which misstate the borrower's obligations, such notices give rise to liability under the TILA.  *See Hubbard*, 91 F.3d at 79 (defendant's "payment adjustment notices were required to reflect the loan agreement"); *Demando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) ("Because the Notice contained terms that were in violation of the credit agreement, the Notice violated Regulation Z.").[8]

Here, Wells Fargo's notices to Plaintiff deviated from her mortgage by failing to provide her the option to maintain flood insurance in the amount of her principal balance.  This "departure from the mortgage documentation" supports her TILA claim.  *Wulf I*, 2011 WL 2550853, at *10; *see also Travis v. Boulevard Bank, N.A.*, 880 F. Supp. 1226, 1230 (N.D. Ill. 1995) (finding TILA violation as "the result of Defendant's departure from the contract"); *Hofstetter I*, 751 F. Supp. 2d at 1125 ("[A] lender's imposition of mandatory flood insurance

---

[8] One of the central purposes of the TILA is to "protect the consumer against inaccurate and unfair credit billing" practices.  15 U.S.C. § 1601(a).

coverage in connection with a HELOC, where no such insurance was required at the loan's consummation . . . , must be deemed a 'change of terms'" in violation of TILA).[9]

### 2. Wells Fargo Violated the TILA by Failing to Provide Plaintiff with New Credit Disclosures

Wells Fargo also violated the TILA by failing to supplement its credit disclosures to account for the new flood insurance coverage levels that it demanded and force-placed. *See* 12 C.F.R. pt. 226, Supp. I, § 17(c), cmt. 2 (any modification that "rises to the level of a change in the terms of the legal obligation" should be "reflected in the disclosures" and agreed-upon by the parties). By demanding and ultimately purchasing flood insurance coverage that was not authorized as part of the original loan transaction, Wells Fargo entered into a separate transaction that triggered a new set of disclosures. *See Travis*, 880 F. Supp. at 1229-30 ("Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction" that "required new disclosures" under 12 C.F.R. § 226.18); *Vician v. Wells Fargo Home Mortg.*, 2006 WL 694740, at *5 (N.D. Ind. Mar. 16, 2006) ("Wells Fargo's actions in force-placing insurance on Plaintiffs' account may have triggered new disclosures under section 226.18 of Regulation Z."); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1009 n.3 (D. Minn. 2008). Thus, Plaintiff has stated a valid claim that Wells Fargo violated the TILA by failing to make these disclosures. *See Wulf I*, 2011 WL 2550853, at *10 ("Plaintiffs have stated a claim that they were entitled to new disclosure under TILA."); *Hofstetter I*, 751 F. Supp. 2d at 1128 ("[T]his order also finds that a plausible claim . . . has been stated. This particular claim is premised on the

_____

[9] Although *Hofstetter* dealt with an open-ended credit plan, the duty to accurately disclose the terms of the legal obligation between the parties applies to both open-ended and closed-ended credit plans. *Cf.* 12 C.F.R. § 226.5(c) (open-ended credit plans) *with* 12 C.F.R. § 226.17(c) (closed-ended credit). Indeed, the very nature of a closed-end loan is that its terms are ***not*** subject to change. In any event, both *Wulf* and *Travis* involved closed-end mortgage loans.

allegation that [defendant] 'fail[ed] to provide proper notice, after origination, that [it] was amending the terms of the credit plans as described in the deeds of trust[.]'").[10]

## B.   Wells Fargo's "Defenses" to Plaintiff's TILA Claim Lack Merit

Wells Fargo's purported defenses to Plaintiff's TILA claim are meritless.  Because Wells Fargo entered into a "new credit transaction" by purchasing flood insurance that was unauthorized under the terms of the original mortgage, *see Travis*, 880 F. Supp. at 1229-30, it is a "creditor" for purposes of the statute.  The fact that Wells Fargo did not originate the mortgage is irrelevant.  The defendant in *Wulf* also acquired the plaintiff's mortgage, but was subject to liability just the same.

Likewise, because Plaintiff's TILA claim arises from Wells Fargo's actions **subsequent** to the origination of Plaintiff's loan, it falls within the one-year limitations period.  *See Wulf I*, 2011 WL 2550853, at *11 ("[B]ecause Plaintiff's claims involve the alleged change in loan terms and the increase in flood coverage, which occurred only two months prior to the filing of the complaint, I find that the TILA claim is timely."); *Hofstetter I*, 751 F. Supp. 2d at 1124, 1129 ("[T]his order agrees with plaintiff that a plausible and *timely* claim under the TILA has now been stated. . . .  So long as plaintiff's TILA challenge is limited to the bank's supplemental

---

[10]Although Wells Fargo argues that insurance premiums are not considered "finance charges" that must be disclosed as part of the loan transaction if the borrower is free to select the insurance carrier (*Defs' Memo at 8 n.9*), this argument has no application where the insurance premiums charged to the borrower were not authorized as part of the underlying loan transaction.  *See Hofstetter I*, 751 F. Supp. 2d at 1128 (unauthorized "property insurance coverage written in connection with a loan triggers mandatory 'finance charge' disclosures"); *Bermudez v. First of Am. Bank Champion, N.A.*, 860 F.Supp. 580, 601 (N.D. Ill. 1994), *withdrawn pursuant to settlement*, 886 F.Supp. 643 (N.D. Ill. Mar 22, 1995) ("If a factfinder found such charges to be unauthorized, then it could also find that the charging of plaintiffs' accounts for the cost of that insurance . . . [was] a finance charge."); *Travis*, 880 F. Supp. at 1229-30 (premiums for unauthorized insurance constituted "finance charges").  Moreover, as the court recognized in *Wulf*, force-placed coverage is obtained through an affiliate of the bank, not an insurance company of the borrower's choice.  *See Wulf I*, 2011 WL 2550853, at *9.

disclosures -- *e.g.*, the flood insurance 'form letters' -- . . . there is no need to "toll" the TILA claim herein.") (emphasis in original).[11]   Plaintiff had no reason to complain until Wells Fargo took action that was inconsistent with the loan terms.   *See Goldman v First Nat'l Bank of Chicago*, 532 F.2d 10, 21-22 (7th Cir. 1976) ("We are persuaded that when, as here, there has been an incomplete, inaccurate or misleading disclosure, the limitations period should not be measured from the date the disclosure was required by law to be made, but instead by the date on which a finance charge was first imposed. … Until a finance charge is levied the debtor has no cause for complaint since there has been no action inconsistent with the inaccurate disclosure.").

## IV.   Plaintiff Has Stated a Valid RESPA Claim

Plaintiff also has stated a valid RESPA claim against Wells Fargo.   One of Congress' goals in enacting RESPA was "the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2).   Accordingly, it is unlawful under the statute to accept referral fees or kickbacks in connection with any real estate settlement service rendered in connection with a federally-regulated mortgage loan.   12 U.S.C. § 2607(a).   Likewise, it is unlawful to accept unearned commissions or fee splits in connection with any real estate settlement service provided to a mortgage borrower.   12 U.S.C. § 2607(b).

Notably, Wells Fargo does not deny Plaintiff's allegation that it accepted kickbacks, commissions, or other compensation in connection with lender-placed flood insurance.   *See Complaint, ¶¶ 75-76.*   Nor could it, since its own form letters to Plaintiff and other borrowers acknowledged that "Wells Fargo Bank, N.A. will be compensated in connection with this lender-placed insurance."   *Complaint, ¶ 22.*   Instead, Wells Fargo argues that it was free to charge borrowers inflated premiums for flood insurance and retain a portion of the premiums for itself

---

[11]   Plaintiff filed this action on April 7, 2011, less than four months after Wells Fargo first informed her of an alleged "deficiency" in her flood insurance coverage, and less than two months after Wells Fargo force-placed coverage on her property for the first time.

(as commissions or other "compensation") because the provision of flood insurance is not a "settlement service" as defined by RESPA.

This argument flies directly in the face of HUD's implementing regulations, which define the term "settlement service" to include: "Provision of services involving hazard, flood, or other casualty insurance or homeowner's warranties[.]"  24 C.F.R. § 3500.2.  Although Wells Fargo parses this definition to argue that the provision of flood insurance after the loan closing falls outside the scope of the statute because it is not rendered in connection with the "settlement" of the loan, this argument lacks merit for several reasons.

First, the provision of flood insurance on the borrower's property cannot take place until the borrower actually closes on the loan and owns the property.  Thus, under Wells Fargo's interpretation of the statute, the provision of flood insurance would never qualify as a "settlement service," even though it is expressly included within the definition of "settlement service."

Second, the relevant definition does not state that the enumerated services (including the provision of flood insurance) must be rendered "at or before" closing.  Rather the definition states that such services must be rendered "in connection with" the settlement of a mortgage loan.  This language is broader, and does not include a temporal limitation.

Third, Plaintiff specifically alleges that flood insurance coverage was required as a condition of the settlement of her mortgage loan, and that premiums for flood insurance were reflected on her HUD-1 settlement statement.  *Complaint, ¶ 18, n.4.*  Thus, flood insurance was provided "in connection with" the settlement of her loan.

Fourth, HUD has publicly commented that the type practices alleged in this case expose banks to liability under RESPA.  In a recent investigative report in the *American Banker* magazine, which spotlighted several banks' cozy relationship with their flood insurers, a HUD

spokesman opined that it is "clear" such practices violate RESPA.  *See Exhibit 4*  ("It is clear that [RESPA] prohibits fee splitting and unearned fees for services that are not performed.").

Fifth, Wells Fargo's interpretation of the statute is inconsistent with another one of RESPA's stated goals: "reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance."  12 U.S.C. § 2601(b)(3).  Thus, Wells Fargo's temporal analysis has no viability "in the context of escrow accounts[.]"  *Flagg v. Yonkers Sav. & Loan Ass'n*, 370 F. Supp. 2d 565, 580 (S.D.N.Y. 2004).

Sixth, Congress recently amended RESPA to underscore that "[a]ll charges . . .  related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable."  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463, 2010 U.S.C.C.A.N. (124 Stat.) 1376, 2183 (to be codified at 12 U.S.C. § 2605(m)). This further demonstrates that the statute is intended to protect borrowers against abusive force-placed insurance practices, such as those alleged here.

Finally, other courts have rejected Wells Fargo's argument that RESPA does not apply to services rendered after closing.  *See Cortez v. Keystone Bank, Inc.*, 2000 WL 536666, at *10 (E.D.Pa. May 2, 2000) ("RESPA applies not only to the actual settlement process but also to the 'servicing' of any 'federally related mortgage loan.'").  For example, in the closely analogous context of private mortgage insurance, which also is enumerated as a "settlement service" under 24 C.F.R. § 3500.2, at least two courts have held that this argument is "without merit":

> Defendants point out that RESPA only applies to services performed, and costs payable, at or before the closing of the real estate sale or loan. See *Bloom v. Martin,* 77 F.3d 318, 321 (9th Cir. 1996). Defendants contend that because the risk insured by the private mortgage insurer only starts after the closing and borrowers often pay their premiums after closing, the transaction is not covered by RESPA. Defendants' argument is without merit. The service provided by the private mortgage insurer is clearly a 'service provided in connection with a real estate settlement' (12 U.S.C. 2602(3)).  Despite defendants' contention otherwise,

19

it is of no matter when the risk insured actually arises or when the borrower actually pays the premium. The costs associated with the private mortgage insurance agreement became payable upon the closing of the transaction.

*Munoz v. PHH Corp.*, 659 F. Supp. 2d 1094, 1098-99 (E.D. Cal. 2009) (quoting *Kay v. Wells Fargo & Co.,* 247 F.R.D. 572, 576 (N.D. Cal.2007)).   The same logic applies here. [12]

## V.      Plaintiff Has Stated a Valid Breach of Fiduciary Duty Claim

Plaintiff also has stated a valid claim against Wells Fargo for breach of fiduciary duty.  In this regard, it is important to note that Wells Fargo did not simply request that Plaintiff purchase additional flood insurance, or send her a bill for insurance that it purchased out of its own account.  Rather, Wells Fargo puchased unnecessary flood insurance out of her ***escrow account***, at an inflated premium, and took a commission for itself on the transaction.

"Where [a] mortgagor pays funds to a bank with an expressed purpose that the funds shall be used for a particular purpose, then the funds may be deemed to be held in trust." *Buchanan v. Brentwood Fed. Sav. & Loan Ass'n*, 320 A.2d 117, 124 (Pa. 1974) ("*Buchanan I*"). Here, Plaintiff's FHA mortgage provided that a portion of her monthly mortgage payments was to be devoted to "premiums for insurance," and further provided that these funds were to be held in escrow by her lender.  *Complaint, ¶¶ 84-85.*   This type of arrangement creates a trust relationship that imposes fiduciary duties on the bank that holds the funds.  *See Buchanan v. Century Fed. Sav. & Loan Ass'n of Pittsburgh*, 542 A.2d 117, 120-21 (Pa. Super. Ct. 1988) ("*Buchanan II*") (finding trust relationship based on similar FHA mortgage escrow provision).

---

[12] The case law cited by Wells Fargo does not deal with charges for insurance, and is distinguishable.  For example, in *Bloom v. Martin*, 77 F.3d 318 (9th Cir. 1996), the only circuit case cited by Wells Fargo, the court noted that "HUD-1 does not expressly refer to either reconveyance [or] demand fees[.]"  F.3d at 321.  By contrast, HUD-1s do refer to flood insurance.  Moreover, the court in *Bloom* noted that the fees in that case were not included in "RESPA's non-exhaustive list of settlement services."  *Id.*  Here, by contrast, the regulations explicitly list flood insurance as a settlement service.  This is presumably why the courts in the cases cited above reached a different result in the context of private mortgage insurance.

Wells Fargo violated this trust relationship and its fiduciary duties to Plaintiff in at least two ways. First, Wells Fargo breached its fiduciary duties by using escrow funds to purchase more flood insurance than was authorized by the mortgage agreement or required by federal law. As the court held in *Vician*:

> In the case at bar, Plaintiffs allege that Wells Fargo assumed fiduciary duties with respect to the money it held or charged in escrow for Plaintiffs. Plaintiffs claim that Wells Fargo breached its fiduciary duties by charging excessive force-placed insurance premiums and finance charges to Plaintiffs' escrow account. Based on these factual allegations, it is reasonable to infer that Plaintiffs are claiming that Wells Fargo breached its fiduciary duties by mismanaging Plaintiffs' escrow account. Other courts have stated that mismanagement of an escrow account may give rise to a cause of action for a breach of fiduciary duty claim by a mortgagor against a mortgagee. . . . By alleging facts from which it can be inferred that Wells Fargo mismanaged Plaintiffs' escrow account, Plaintiffs have sufficiently pled the existence of a fiduciary relationship. Therefore, Defendant's motion to dismiss is DENIED[.]

*Vician*, 2006 WL 694740, at * 8; *accord, O'Neill v. Sovereign Bank*, No. 9708-0525, 1998 WL 1543498 (Pa. Ct. Comm. Pl. Dec. 15, 1998) (certifying class of Pennsylvania residents alleging breach of fiduciary duty, breach of contract, and violation of PAUTP-CPL, based on defendant's practice of "requir[ing] homeowners who held mortgages with or were serviced by [defendant] to escrow more funds than either the law or the homeowners' mortgage contracts allowed"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 622-26 (E.D. Pa. 1994) (certifying class asserting similar claims against mortgagee for breach of fiduciary duty, breach of contract, and violation of PAUTP-CPL based on handling of funds in escrow account).

Second, Wells Fargo further violated its fiduciary duties by using funds in Plaintiff's mortgage escrow account to "generate profits for [its] own account." *Buchanan I*, 320 A.2d at 128. Under Pennsylvania law, it was obligated to act **solely** for Plaintiff's benefit with respect to matters relating to the escrow account. *See Dinger v. Allfirst Fin., Inc.*, 82 Fed. Appx. 261, 265 (3d Cir. 2003).

Although Wells Fargo argues that Plaintiff's breach of fiduciary claim is barred by the "gist of the action doctrine," this argument lacks merit. The foregoing cases demonstrate that lenders and servicers who overstep their authority under a mortgage escrow account and use escrow funds to enrich themselves at the expense of their borrowers are liable for breach of fiduciary duty. This is because the claim is based on a breach of the trust relationship created by the escrow account, not simply a breach of contract. The lone case cited by Wells Fargo arises in a different context, does not involve a mortgage lender or an escrow account, and therefore is distinguishable. *See Defs' Memo at 22, 24* (citing *Mercy Health Sys. of Southeast Penn. v. Metro. Partners Realty, LLC*, No. 03046, 2003 WL 21904583 (Pa. Ct. Com. Pl. July 10, 2003)).

## VI.     Plaintiff Has Stated a Valid Unjust Enrichment Claim

Plaintiff's Complaint also states a valid claim for unjust enrichment. Although Wells Fargo argues that this claim is inapplicable where the rights of the parties are governed by a contract (*Defs' Memo at 24*), this argument ignores the basis for Plaintiff's unjust enrichment claim. Importantly, Plaintiff's unjust enrichment claim is ***not*** based on the fact that Wells Fargo required Plaintiff to carry more flood insurance than was required by her mortgage. Rather, Plaintiff's unjust enrichment claim is based on the fact that Wells Fargo unfairly enriched itself by taking a kickback in connection with the insurance that it purchased from Plaintiff's escrow account. *See Complaint, ¶¶ 94-97.*

Although Paragraph 4 of the mortgage speaks to the amount of flood insurance that is required (and authorizes the lender to force-place coverage if the required amount of insurance is not maintained), the mortgage is conspicuously silent on the cost of force-placed insurance, whether commissions will be paid on force-placed insurance, and who will receive those commissions in the event they are paid. Because these matters fall outside the express language

22

of the contract, they are governed by equitable principles that form the basis for a claim for unjust enrichment. *See Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 893 (Pa. Super. 2006) (plaintiff could assert a claim for unjust enrichment in spite of an existing written contract between the parties, because the matter underlying the unjust enrichment claim was outside the scope of the terms of the contract).[13]

Here, it was inequitable for Wells Fargo to accept kickbacks in connection with force-placed flood insurance. As noted above, this practice is inconsistent with the anti-kickback provision in RESPA (12 U.S.C. § 2607), and the recent amendments to the statute requiring that force-placed insurance charges must be "bona fide and reasonable." *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463, 2010 U.S.C.C.A.N. (124 Stat.) 1376, 2183 (to be codified at 12 U.S.C. § 2605(m)). Moreover, it is also inconsistent with the NFIA, which states that lenders and servicers are only permitted to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012(e)(2) (emphasis added); *see also* 12 C.F.R. § 22.3. Accordingly, Plaintiff should be permitted to proceed with her claim. *See Vician*, 2006 WL 694740, at *9 (allowing plaintiff to proceed with claim for unjust enrichment based on Wells Fargo's force-placed insurance practices); *accord*, *Hofstetter II*, 2011 WL 1225900, at *15 (certifying class of borrowers to pursue claim that defendant engaged in unfair business practices "by charging inflated premiums and by generating commission income through self-dealing").

---

[13] *Accord*, *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1230 (3d Cir. 1987) (claim for unjust enrichment is barred if there is an express contract **on the same subject**); *Brunwasser v. U.S.*, 2008 WL 5216253, at *5 (W.D. Pa. Dec. 11, 2008) ("[T]he existence of an express contract between the parties does not preclude the existence of an implied contract if the implied contract is distinct from the express ones.").

## VII.    Plaintiff Has Stated a Valid Pennsylvania Consumer Protection Claim

For the same reasons, Plaintiff's Pennsylvania consumer protection claim is not barred by the economic loss doctrine or the gist of the action doctrine.  The economic loss doctrine only "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows **only** from a contract.'"   *Werwinski v. Ford Motor Co.*, 286 F.3d 661, at 671 (3d Cir. 2002) (emphasis added).   Similarly, the gist of the action doctrine only prohibits Plaintiffs from bringing tort claims that are "wholly dependent" on the terms of a contract.   *See Defs' Memo at 25*.   These doctrines have no application "where the claims at issue arise independently of the underlying contract."   *Werwinski*, 286 F.3d at 676.

Here, Plaintiff's claim under the PAUTP-CPL is not based **only** on the underlying mortgage contract.   In Paragraph 101 of her Complaint, Plaintiff alleges that Wells Fargo violated the PAUTP-CPL "by virtue of [its] unfair, deceptive, and fraudulent practices in connection with force-placed flood insurance and escrow accounts[,]" including its practice of accepting "commissions[] and other compensation" in connection with force-placed insurance purchased out of escrow.   *Complaint, ¶¶ 101-102.*[14]   Because this claim is not based on the contract itself, but rather on larger social policies requiring good faith and fair dealing, it is not barred by the economic loss doctrine or the gist of the action doctrine.   *See, e.g., Bohler-Uddenholm Amer., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 105 (3d Cir. 2001) ("The 'larger social policy' that defines [plaintiff's] claim is the policy requiring fair dealing[.]"); *NutriSystem, Inc. v. Nat'l Fire Ins. Of Hartford*, No. Civ.A. 03-6932, 2004 WL 2646598, at *6 (E.D. Pa. Nov. 19, 2004) ("The claims arise from duties imposed as a matter of social policy, not from duties imposed by the franchise agreements."); *accord, In re Fowler*, 425 B.R. 157, 190-91 (Bkrtcy.

_____

[14] This allegation is separate and distinct from Plaintiff's allegation, in Paragraph 100, that Wells Fargo violated the PAUTP-CPL by misrepresenting the amount of insurance that was required under her mortgage and federal law.

24

E.D. Pa. 2010) (declining to apply economic loss doctrine to UTPCPL claim involving mortgage); *Smith v. John Hancock*, 2008 WL 4072585, at *11 (E.D. Pa. Sept. 2, 2008) (same).[15]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Wells Fargo's motion to dismiss in its entirety.

Respectfully submitted,

Dated:  July 11, 2011                NICHOLS KASTER, PLLP

 /s/Kai Richter
Charles G. Frohman, MN Bar No. 0386695
Paul J. Lukas, MN Bar No. 22084X
E. Michelle Drake, MN Bar No. 0387366
Kai Richter, MN Bar No. 0296545
Rebekah L. Bailey, MN Bar No. 0389599
4600 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASSES

---

[15] The court's ruling in *Wulf I* is consistent with this analysis.  In that case, the court held that the plaintiff's PAUTP-CPL claim was barred by the economic loss doctrine because it was exclusively "based on [the bank's] misrepresentation that his flood insurance was not adequate," and "turn[ed] on construction of the language of paragraph 4 of the mortgage."  *Wulf I*, 2011 WL 2550853, at *7.  In reaching this result, however, the court emphasized that recovery under the PAUTP-CPL is appropriate for claims that are independent of the contract, and arise from a social policy or standard.  *Wulf I*, 2011 WL 2550853, at *6 & *7 n.8.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DESIREE MORRIS, individually and as a         :      **Civil Case No.: 2:11-cv-00474-DSC**
representative of putative classes,           :
                                              :      **Judge David Stewart Cercone**
                          Plaintiff,          :
                                              :      **ELECTRONICALLY FILED**
                 v.                           :
                                              :
WELLS FARGO BANK, N.A., and                   :
WELLS FARGO HOME MORTGAGE, INC.  :
                                              :
                          Defendants.         :

## CERTIFICATE OF SERVICE

I, Kai Richter, hereby certify that on this 11th day of July, 2011, *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint* was filed electronically and is available for viewing and downloading from the ECF system of the United States District Court for the Western District of Pennsylvania.  The ECF System's electronic mailing service constitutes service on all parties who have consented to electronic service.

_/s/Kai Richter_