**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DESIREE MORRIS, individually and as a representative of the classes, | **Civil Case No.: 2:11-cv-00474-DSC** |
| Plaintiff, | **Judge David Stewart Cercone** |
| | **ELECTRONICALLY FILED** |
| v. | |
| WELLS FARGO BANK, N.A. and WELLS FARGO HOME MORTGAGE, INC. | |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff Desiree Morris ("Plaintiff"), on behalf of herself and the putative classes set forth below, and in the public interest, brings the following First Amended Complaint against Defendants Wells Fargo Bank, N.A. ("WFB"), Wells Fargo Home Mortgage, Inc. ("WFHM")  and Wells Fargo Insurance, Inc. ("WFI") (collectively, "Wells Fargo" or "Defendants").

**PRELIMINARY STATEMENT**

1.     Plaintiff and the putative class members currently have or formerly had loans or lines of credit with Wells Fargo, secured by their residential property, and were required to purchase flood insurance by Wells Fargo.

2.     Defendants systematically violated the legal rights of Plaintiff and other putative class members in two fundamental respects, as set forth below.

3.      First, Defendants unfairly, unjustly, and unlawfully forced Plaintiff and other borrowers to purchase and maintain flood insurance for their property in amounts greater than required by law, greater than required by their mortgage agreements, and greater than Wells Fargo's financial interest in their property, without any reasonable basis or justification.

4.      Second, Defendants unfairly, unjustly, and unlawfully profited from force-placing flood insurance on Plaintiff's property and the property of other borrowers, by charging Plaintiff and other borrowers amounts in excess of the net costs incurred for such flood insurance and by directing kickbacks, commissions, and other compensation to Wells Fargo in connection with force-placed (also known as lender-placed) flood insurance.

5.      Defendants engaged in this conduct in bad faith, knowing that their actions were inconsistent with applicable law, reasonable commercial standards of fair dealing, and the reasonable expectations of borrowers upon originating their mortgages.

6.      Based on Defendants' conduct as described herein, Plaintiff asserts claims for (1) violation of the Truth-In-Lending Act ("TILA"); (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"); (5) breach of fiduciary duty; (6) unjust enrichment; and (7) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PAUTP-CPL).

7.      Plaintiff asserts these claims on behalf of three proposed classes of Wells Fargo borrowers.  Plaintiff asserts her TILA, breach of contract, and breach of covenant of good faith and fair dealing claims (Counts 1-3) on behalf of a putative nationwide

class consisting of all persons who have or had a FHA loan with Defendants secured by their residential property, and were required by Defendants or their agents or affiliates to purchase or maintain flood insurance on their property in the United States within the applicable limitations period (the "Nationwide Flood Insurance Class").[1]  Plaintiff asserts her RESPA, breach of fiduciary duty, and unjust enrichment claims (Counts 4-6) on behalf of a separate nationwide class consisting of all persons who were charged for lender-placed flood insurance by Defendants and/or paid such charges to Defendants, in whole or in part, within the applicable limitations period (the "Nationwide Lender-Placed Insurance Class").[2]  Finally, Plaintiff asserts her PAUTP-CPL claim (Count 7) on behalf of a putative Pennsylvania Class consisting of all persons who have or had a FHA loan with Defendants secured by their residential property and were required by Defendants to purchase or maintain flood insurance on their property in the State of Pennsylvania within six (6) years prior to this action's filing date through the date of final disposition of this action.

8.    Plaintiff and the Putative Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct, as described herein.

## THE PARTIES

9.    Individual and representative Plaintiff Desiree Morris resides in Washington, Pennsylvania, and is a member of the Putative Classes defined below.

---

[1] A one-year limitations period applies to Plaintiff's TILA claim.  *See* 15 U.S.C. § 1640(e).  A longer limitations period applies to her claims for breach of contract and breach of the covenant of good faith and fair dealing.

[2] A one-year limitations period applies to Plaintiff's RESPA claim.  *See* 12 U.S.C. § 2614.  A longer limitations period applies to her breach of fiduciary duty and unjust enrichment claims.

10.     Defendant WFB is a national banking association, legally headquartered in Sioux Falls, South Dakota.  WFB does business in the State of Pennsylvania and several other states throughout the country.

11.     Defendant WFHM is a division of WFB.  WFHM services mortgage loans originated and purchased by WFB, including mortgage loans and lines of credit to Pennsylvania homeowners and homeowners in other states.   At all relevant times, WFHM's conduct was approved, authorized, and/or ratified by WFB.   WFHM is headquartered in Des Moines, Iowa.

12.     WFI is an affiliate of WFB and WFHM, and is based in St. Louis Park, Minnesota.  WFI receives commissions on force-placed insurance policies purchased in connection with mortgages held and/or serviced by WFB and WFHM.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over Plaintiff's TILA and RESPA claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court also has original jurisdiction over this case under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of Pennsylvania, and Defendants are citizens of different states.  The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members of the each of the Putative Classes.

15.     Venue is proper in the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1391. Plaintiff resides in the Western District of Pennsylvania and Defendants regularly conduct business in Pennsylvania, including the Western District of Pennsylvania.

4

## FACTUAL ALLEGATIONS

16.    On November 24, 2009, Plaintiff obtained a FHA mortgage loan from Victorian Finance, LLC ("Victorian Finance") in the amount of $115,371, secured by a mortgage ("Mortgage") on her homestead.  WFB acquired this Mortgage shortly after it was originated, and it is the current lender-in-interest to Plaintiff's Mortgage.  WFHM services Plaintiff's Mortgage on behalf of WFB, and has done so since at least February 1, 2010.  The current principal balance of Plaintiff's mortgage loan is approximately $113,000.  She does not have any other loans or lines of credit secured by her property.

17.    Because Plaintiff's home falls within a Special Flood Hazard Area ("SFHA"), federal law requires flood insurance on her home, for the term of her mortgage loan, "in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act, *whichever is less*." 42 U.S.C. § 4012a(b)(1) (emphasis added).  Unless flood insurance is maintained on her home in this amount, a federally-regulated lender may not make, increase, renew, or extend any loan secured by her property.

18.    Consistent with this federal mandate, Paragraph 4 of Plaintiff's Mortgage provides that Plaintiff is required to insure her home "against loss by floods to the extent required by the Secretary" of Housing and Urban Development ("HUD").  HUD's website, in turn, provides as follows:

> **Dollar Amount of Flood Insurance Coverage.** For loans, loan insurance or guarantees, the amount of flood insurance coverage need not exceed the outstanding principal balance of the loan.

http://www.hud.gov/offices/cpd/environment/review/floodinsurance.cfm    (last    visited

April 7, 2010); *accord*, 24 C.F.R. § 203.16a(c) ("flood insurance must be maintained . . .

in an amount at least equal to . . . the outstanding balance of the mortgage").[3]

19.    Pursuant to federal law and the terms of her Mortgage, Plaintiff obtained

$118,000 worth of flood insurance coverage upon originating her mortgage loan (slightly

more than the amount of her principal balance).[4]  The amount of coverage that Plaintiff

obtained upon origination was deemed adequate by her lender at that time.  This amount

of coverage also was deemed adequate by Wells Fargo at the time it acquired Plaintiff's

Mortgage.

20.    In November of 2010, Plaintiff's flood insurance policy was renewed, and

her coverage was increased to $129,800 (a 10% increase from her previous coverage

level).    This amount of coverage exceeded federal requirements and the coverage

requirements of her Mortgage by more than $14,000.

21.    The following month, however, Wells Fargo sent Plaintiff a form letter

dated December 9, 2010 ("Flood Insurance Coverage Deficiency Notification"),

contending that her flood insurance coverage was "less than the coverage required[.]"

This Flood Insurance Coverage Deficiency Notification claimed that Plaintiff should

"provide replacement cost coverage" for her home, subject to the National Flood

Insurance Program ("NFIP") limit of $250,000.

---

[3] HUD's flood insurance requirements have not changed during the relevant time period.
[4] This coverage was required as a condition of the settlement of her mortgage loan, and
Plaintiff was required to pay the premiums in advance (as reflected on her HUD-1
settlement statement).  Pursuant to Paragraph 2 of her Mortgage, Plaintiff's flood
insurance premiums are escrowed.

22.    Wells Fargo's Flood Insurance Coverage Deficiency Notification was fraudulent, deceptive, and misleading.  Neither federal law nor Plaintiff's Mortgage require her to maintain flood insurance on her property in excess of her principal balance. Conspicuously, Wells Fargo's Flood Insurance Coverage Deficiency Notification did not explain why Plaintiff's existing amount of flood insurance coverage was "less than the coverage required[.]"

23.    Wells Fargo's Flood Insurance Coverage Deficiency Notification stated that Wells Fargo would be required to obtain additional flood insurance, at Plaintiff's expense, if she did not provide evidence of additional insurance within 45 days.  The Flood Insurance Coverage Deficiency Notification also stated that: (1) this lender-placed flood insurance coverage would be arranged through Wells Fargo Insurance, Inc., "an affiliate of Wells Fargo Bank, N.A."; (2) "Wells Fargo Bank, N.A. will be compensated" in connection with this lender-placed insurance; and (3) "In nearly all instances, the additional flood insurance coverage you purchase from an agent or insurance company of your choice will be less costly than the coverage purchased by Wells Fargo Home Mortgage."

24.    After sending Plaintiff this Flood Insurance Coverage Deficiency Notification, Wells Fargo sent Plaintiff a second form letter dated February 8, 2011, entitled "Notice of Temporary Flood Insurance Due to Deficient Coverage" ("Notice of Temporary Flood Insurance").  This Notice of Temporary Flood Insurance claimed that "we have not received evidence of adequate flood insurance for your property[,]" and repeated Wells Fargo's demand that Plaintiff insure her home for the full replacement cost value (subject to the NFIP limit of $250,000).

25.    This Notice of Temporary Flood Insurance also was also fraudulent, deceptive, and misleading.  To justify its demand for additional coverage, Wells Fargo stated: "In the mortgage documents you signed, you agreed to maintain insurance on your property in the amount and for the period required by your mortgage company." However, Wells Fargo omitted the relevant language of Plaintiff's Mortgage, which only requires her to maintain insurance "against loss by floods to the extent required by the Secretary."

26.    In this Notice of Temporary Flood Insurance, Wells Fargo informed Plaintiff that it had purchased $94,000 worth of additional flood insurance for her property in the form of a 90-day insurance binder issued by QBE Insurance Corporation ("QBE").  Wells Fargo indicated that the cost of this 90-day flood insurance binder was $893, and further indicated that "the premium cost for this additional coverage will be charged to your escrow account."  In addition, Wells Fargo threatened to purchase a one-year flood insurance policy if Plaintiff did not provide evidence of the "required" amount of coverage within 30 days, and further stated that "Wells Fargo Insurance, Inc. will receive a commission on the insurance we obtain."

27.    Wells Fargo subsequently sent Plaintiff a "Notice of Flood Insurance Change in Coverage" dated March 3, 2011, informing Plaintiff that "a revised flood insurance policy" would be issued in place of her previous policy, and that WFHM would be "reimbursed by the insurance company" in connection with this replacement policy.

28.    Shortly thereafter, Plaintiff received another Notice of Temporary Flood Insurance Due to Deficient Coverage, dated March 7, 2011 ("Second Notice of Temporary Flood Insurance").  The language of this Second Notice of Temporary Flood

Insurance was identical to the Notice of Temporary Flood Insurance that Wells Fargo sent to Plaintiff on or about February 8, 2011.[5]

29.    The Second Notice of Temporary Flood Insurance enclosed a 90-Day flood insurance binder issued by QBE in the amount of $82,200, indicated that the cost of this replacement flood insurance binder was $780.90, and further indicated that "the premium cost for this additional coverage will be charged to your escrow account." Wells Fargo offered no explanation for the change in the lender-placed coverage amount or premium amount.

30.    The Second Notice of Temporary Flood Insurance also stated that Wells Fargo would purchase a one-year flood insurance policy if Plaintiff did not provide evidence of the "required" amount of coverage within 30 days.  In addition, the Second Notice of Temporary Flood Insurance stated that "Wells Fargo Insurance, Inc. will receive a commission on the insurance we obtain."

31.    Wells Fargo Insurance, Inc. did in fact receive a commission in connection with the force placed insurance that Defendants obtained.  Defendants have admitted in discovery that "Wells Fargo Insurance Inc. received a commission . . . in connection with the lender-placed insurance Plaintiff received on her property."

32.    Defendants knew or should have known that Plaintiff was not "required" to purchase additional flood insurance for her home, as evidenced by, *inter alia*, the following facts:

---

[5] For example, the Second Notice of Temporary Flood Insurance also (1) claimed that "we have not received evidence of adequate flood insurance for your property"; (2) repeated Wells Fargo's demand that Plaintiff insure her home for the full replacement cost value (subject to the NFIP limit of $250,000); and (3) and stated that "you agreed to maintain insurance on your property in the amount and for the period required by your mortgage company."

a)  the plain language of Plaintiff's Mortgage does not require flood insurance in excess of her principal balance;

b)  the National Flood Insurance Act and its accompanying regulations do not require flood insurance in excess of a borrower's principal balance;

c)  HUD does not require flood insurance in excess of a borrower's principal balance;

d)  Victorian Finance did not require flood insurance in excess of Plaintiff's principal balance upon originating her mortgage;

e)  Defendants held and serviced Plaintiff's Mortgage for ten months, without claiming that Plaintiff was "required" to obtain flood insurance for the full replacement cost value of her home;

f)  Defendants did not and cannot identify any changes in federal law, the mortgage documents, or the circumstances surrounding the loan that justified Defendants' representation that Plaintiff's coverage suddenly was not adequate and was "less than the coverage required"; and

g)  Defendants' Notice of Temporary Flood Insurance and Second Notice of Temporary Flood Insurance misrepresented the terms of Plaintiff's Mortgage, and fraudulently omitted to reference the relevant language of her Mortgage, which only requires her to maintain insurance "against loss by floods to the extent required by the Secretary" of HUD.

33.     As a result of Defendants' fraudulent and deceptive acts, and Defendants' unfair and unlawful flood insurance requirements, Plaintiff has incurred unnecessary and excessive expenses for lender-placed flood insurance.  In addition, Defendants have been unfairly, unjustly, and unlawfully enriched by the kickbacks, commissions, or other compensation that were paid in connection with such lender-placed flood insurance.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff asserts her TILA claim (Count 1), breach of contract claim (Count 2), and claim for breach of the covenant of good faith and fair dealing (Count 3) on behalf of a Putative Nationwide Flood Insurance Class defined as follows:

**Proposed Nationwide Flood Insurance Class:** All persons who have or had a FHA loan with Defendants secured by their residential property, and were required by Defendants or their agents or affiliates to purchase or maintain flood insurance on their property in the United States within the applicable limitations period.

35.    Plaintiff asserts her RESPA claim (Count 4), breach of fiduciary duty claim (Count 5), and unjust enrichment claim (Count 6) on behalf of a Putative Nationwide Lender-Placed Insurance Class defined as follows:

**Proposed Nationwide Lender-Placed Insurance Class:** All persons who were charged for lender-placed flood insurance by Defendants and/or paid such charges to Defendants, in whole or in part, within the applicable limitations period.

36.    Plaintiff asserts her PAUTP-CPL claim (Count 7) on behalf of a Putative Pennsylvania Class defined as follows:

**Proposed Pennsylvania Class:** All persons who have or had a FHA loan with Defendants secured by their residential property and were required by Defendants to purchase or maintain flood insurance on their property in the State of Pennsylvania within six (6) years prior to this action's filing date through the date of final disposition of this action.

37.    <u>Numerosity</u>:   The Putative Classes are so numerous that joinder of all Class members is impracticable.   Hundreds and likely thousands of Defendants' customers satisfy the definition of the Putative Classes.

38.    <u>Typicality</u>:     Plaintiff's claims are typical of the members of the Putative Classes, as demonstrated by, *inter alia*, the following facts: (1) Plaintiff's loan and mortgage documents are typical of those of other Putative Class members; (2) the form flood insurance notice letters she received were typical of those received by other Putative Class members; (3) Defendants treated her consistent with other Putative Class members in accordance with Defendants' uniform policies and practices; (4) it was typical for Defendants to require borrowers to purchase and maintain flood insurance in

11

amounts greater than required by law, greater than required by their mortgages, and greater than required to insure the amount of funds extended, without any reasonable basis or justification; and (5) it was typical for Wells Fargo to accept kickbacks, commissions, or other compensation in connection with lender-placed flood insurance. Defendants' flood insurance requirements (calling for coverage equal to replacement cost value up to the NFIP maximum of $250,000) are the same for all borrowers, regardless of individual circumstances, and Defendants' form letters informing borrowers of these requirements are the same or substantially similar for all borrowers. Further, Wells Fargo received uniform commissions or other compensation in connection with lender-placed flood insurance that were not specific to particular borrowers.

39. <u>Adequacy</u>:    Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation. Plaintiff has no interests which are adverse to those of the Classes that she seeks to represent.

40. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

   a. Whether federal law requires Defendants' customers to purchase and maintain flood insurance in amounts greater than necessary to secure their outstanding principal balance;

   b. Whether the mortgage documents relied upon by Defendants authorize Defendants to demand and/or force-place flood insurance in amounts greater than necessary to secure the amount of funds borrowed;

   c. Whether Defendants' form letters to borrowers misrepresent applicable flood insurance requirements;

    d.   Whether WFB violated TILA by failing to accurately disclose customers' flood insurance requirements, and by changing its flood insurance requirements after-the-fact without proper notice or consent;

    e.   Whether WFB and WFHM breached their contracts with customers by demanding unauthorized amounts of flood insurance or amounts that were not properly and adequately disclosed in such contracts;

    f.   Whether WFB and WFHM owe their customers a duty of good faith and fair dealing, and if so, whether they breached this duty by, *inter alia*, (i) demanding flood insurance in amounts greater than necessary to secure the amount of funds extended and greater than agreed to; and (ii) obtaining kickbacks, commissions, or other compensation for themselves and/or WFI in connection with lender-placed flood insurance policies that were purchased through WFI rather than at arm's length;

    g.   Whether Defendants violated RESPA by accepting kickbacks, commissions, or other compensation in connection with lender-placed flood insurance;

    h.   Whether WFB and WFHM owe their customers a fiduciary duty in connection with escrowed payments for flood insurance, and if so, whether they breached this fiduciary duty by (i) unilaterally making payments out of escrow for force-placed flood insurance that customers did not want and were not required to obtain; and (ii) obtaining kickbacks, commissions, or other compensation for themselves and/or WFI in connection with force-placed flood insurance purchased with customers' escrow funds;

    i.   Whether Defendants were unjustly enriched by the conduct described in this Complaint;

    j.   Whether Defendants' conduct described in this Complaint constitutes one or more violations of the PAUTP-CPL;

    k.   The appropriateness and proper form of any declaratory or injunctive relief; and

    l.   The appropriateness and proper measure of compensatory damages, statutory damages, restitution, and/or other monetary relief.

    41.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the

Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

42. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary flood insurance premiums and related charges that are readily calculable from Defendants' records and other class-wide evidence. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any members of the Putative Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of the Putative Class members' claims in a single forum in Pennsylvania, where all of the Putative Pennsylvania Class members reside and many of the Putative Nationwide Class members reside.

43. Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendants' records.

14

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TRUTH IN LENDING ACT

### (15 U.S.C. § 1601 *et seq.*)

### (ASSERTED AGAINST WFB)

44.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

45.    Residential mortgage loan agreements between Defendant WFB and its customers are subject to the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

46.    WFB is a "creditor" as defined by TILA.

47.    WFB is required to clearly, conspicuously, and timely disclose all finance charges, other charges, and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

48.    WFB is further required to accurately and fully disclose the terms of the legal obligation between the parties.

49.    WFB violated TILA by misrepresenting to Plaintiff and other Nationwide Flood Insurance Class members that they were required to purchase flood insurance in amounts greater than necessary to secure the amount of funds extended.

50.    In addition, WFB violated TILA by, *inter alia*, (i) adversely changing the terms of mortgage loans after origination without consent and demanding more insurance than previously required in amounts greater than necessary to protect its interest in the property; and (ii) failing to provide proper notice, after origination, that WFB was amending the terms of loans as described in the relevant mortgage documents.

51.    The TILA violations set forth above occurred within one year of the commencement of this action.  To the extent that the violations described above occurred earlier, Plaintiff did not discover and did not have a reasonable opportunity to discover WFB's fraud and nondisclosures until Defendants notified her on December 9, 2010 that it was necessary for her to increase her flood insurance coverage because her existing coverage allegedly was "less than the coverage required[.]"   Prior to this time, Plaintiff had no reason or opportunity to complain about any TILA violations.

52.    Plaintiff's TILA claim is timely.  The statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that she had a reasonable opportunity to discover WFB's TILA violations and complain about such violations.  It would be manifestly unjust and inconsistent with the purposes of TILA to apply and enforce an earlier accrual date for Plaintiff's TILA claim.

53.    WFB systematically and pervasively engaged in similar violations of TILA to the detriment of other members of the Nationwide Flood Insurance Class.

54.    Plaintiff and the Nationwide Flood Insurance Class have been injured and have suffered a monetary loss as a result of WFB's violations of TILA.

55.    As a result of WFB's violations, Plaintiff and the Nationwide Flood Insurance Class are entitled to recover actual damages and a penalty of $500,000 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

56.    Plaintiff and the Nationwide Flood Insurance Class also are entitled to recovery of attorneys' fees and costs to be paid by WFB, as provided by 15 U.S.C. § 1640(a)(3).

57.    In addition, Plaintiff and the Nationwide Flood Insurance Class are entitled to a declaration that WFB's actions violate TILA, and corresponding injunctive relief enjoining WFB from engaging in further such violations.

## SECOND CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (ASSERTED AGAINST WFB AND WFHM)

58.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

59.    WFB is the lender-in-interest to Plaintiff's Mortgage and is bound by the terms of that Mortgage.

60.    Plaintiff's Mortgage does not require flood insurance in an amount greater than the unpaid principal balance on the loan.

61.    Defendants WFB and WFHM breached the Mortgage by requiring Plaintiff to obtain flood insurance in excess of her principal balance and by force-placing flood insurance in excess of her principal balance.

62.    This breach was willful and not the result of mistake or inadvertence. Defendants WFB and WFHM systematically and pervasively required other members of the Nationwide Flood Insurance Class to obtain flood insurance in excess of the amount required under their mortgage agreements.

63.    As a direct result of this unlawful conduct, Plaintiff and the Nationwide Flood Insurance Class have suffered damages in the form of increased insurance premiums, escrow charges, interest payments, and/or other charges, and unnecessary burdens on their property rights.

64.     Plaintiff and the Nationwide Flood Insurance Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

## THIRD CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (ASSERTED AGAINST WFB AND WFHM)

65.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

66.     Defendants WFB and WFHM owed Plaintiff and the Nationwide Flood Insurance Class a duty of good faith and fair dealing, by virtue of Defendants' contractual relationship with Plaintiff and the Nationwide Flood Insurance Class members.

67.     Defendants WFB and WFHM breached this duty by, among other things: (1) demanding and/or force-placing more flood insurance than required by federal law or the relevant loan and mortgage documents; (2) misrepresenting the amount of flood insurance that Plaintiff and other Nationwide Flood Insurance Class members were required to maintain on their property; (3) unreasonably exercising in bad faith any purported discretionary authority they claim they were afforded under the loan and mortgage documents; (4) imposing contractual requirements that did not exist or that exceeded the requirements disclosed in the relevant contracts; and (5) charging borrowers sham "costs" for flood insurance that did not reflect the true cost of the insurance because a portion of such "costs" were kicked back to Wells Fargo as commissions or other compensation.

68.     Defendants WFB and WFHM willfully engaged in the foregoing conduct in bad faith, for the purpose of (i) unfairly and unconscionably maximizing revenue from borrowers; (ii) generating commissions, interest, fees, and other compensation for Wells

Fargo; (iii) providing a ready-made customer base for WFI; (iv) gaining unwarranted contractual and legal advantages; and (v) depriving Plaintiff and other Nationwide Flood Insurance Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the funds extended to them.

69.    As a result of these breaches of the covenant of good faith and fair dealing, Plaintiff and the Nationwide Flood Insurance Class have been injured, and have suffered actual damages and monetary losses in the form of increased insurance premiums, escrow charges, interest payments, and/or other charges, and unnecessary burdens on their property rights.

70.    Plaintiff and the Nationwide Flood Insurance Class are entitled to recover these damages and other appropriate relief from Defendants WFB and WFHM.

## FOURTH CLAIM FOR RELIEF
### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### (12 U.S.C. § 2601 *et seq.*)
### (ASSERTED AGAINST WFB, WFHM AND WFI)

71.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

72.    Plaintiff's mortgage loan is a federally-regulated mortgage loan subject to the requirements of RESPA, 12 U.S.C. § 2601 *et seq.*

73.    12 U.S.C. § 2607(a) provides: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

74.    12 U.S.C. § 2607(b) further provides: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

75.    Defendants have violated the foregoing RESPA provisions by virtue of their conduct as set forth above in connection with lender-placed flood insurance.

76.    The "[p]rovision of services involving hazard, *flood*, or other casualty insurance" incident to a federally-regulated mortgage loan constitutes a "settlement service" for purposes of RESPA.  *See* 24 C.F.R. § 2500.2(b) (emphasis added).

77.    Wells Fargo has unlawfully accepted fees, kickbacks, commissions, or other things of value in connection with an agreement or understanding to purchase lender-placed flood insurance from their lender-placed flood insurance carrier.

78.    Defendants and their affiliates have unlawfully accepted a portion, split, or percentage of the premiums charged for lender-placed flood insurance, without actually performing commensurate services.

79.    These RESPA violations are evidenced by, among other things, Defendants' own form letters, which admit to the unlawful commission and compensation arrangements in connection with lender-placed flood insurance.

80.    Plaintiff and the Nationwide Lender-Placed Insurance Class are entitled to statutory damages for Defendants' violations of 12 U.S.C. § 2607(a)-(b) in an amount equal to three times the amount of premiums they paid for lender-placed flood insurance. *See* 12 U.S.C. § 2607(d)(2).

81.    Plaintiff and the Nationwide Lender-Placed Insurance Class are also entitled to recover their attorneys' fees and costs of this action pursuant to 12 U.S.C. § 2607(d)(5).

82.    In addition, Plaintiff and the Nationwide Lender-Placed Insurance Class are entitled to a declaration that Defendants' actions violate RESPA, and corresponding injunctive relief enjoining defendants from engaging in further such violations.

83.    Plaintiff's RESPA claim is timely, as the RESPA violations set forth above occurred within one year of the commencement of this action.  Alternatively, the limitations period on Plaintiff's RESPA claim should be equitably tolled because Plaintiff did not discover and did not have a reasonable opportunity to discover Defendants' unlawful conduct until less than one year prior to the date that this action was filed.

## FIFTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY/MISAPPROPRIATION OF FUNDS HELD IN TRUST
### (ASSERTED AGAINST WFB AND WFHM)

84.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

85.    Plaintiff's Mortgage is a Pennsylvania FHA Mortgage that contains a standard escrow provision in Paragraph 2 of the Mortgage, which is typical of other mortgages originated and/or serviced by WFB and WFHM.

86.    Paragraph 2 of Plaintiff's Mortgage provides that "Borrower shall include in each monthly payment . . . premiums for insurance[,]" including flood insurance.

87.    Paragraph 2 of Plaintiff's Mortgage further provides that the sums included in Plaintiff's monthly payment for insurance premiums are to be held in escrow by her lender.  These funds are to be used for the purpose of paying her insurance

premiums when due, and any excess funds are to be returned to Plaintiff under the terms of her Mortgage.

88.     Since the time that they acquired and began servicing Plaintiff's Mortgage, WFB and WFHM have accepted accepted monies from Plaintiff for insurance premiums on a monthly basis and have held them in escrow, pursuant to Paragraph 2 of her Mortgage.

89.     WFB and WFHM were obligated to hold these escrow funds in trust, and owed Plaintiff a fiduciary duty with respect to the handling of such funds. *See, e.g., Buchanan v. Brentwood Sav. & Loan Ass'n*, 320 A.2d 117, 121-28 (Pa. 1974); *Valenza v. Heine*, 1986 WL 15000, at *6 (E.D.Pa. Dec. 31, 1986).

90.     WFB and WFHM breached their fiduciary duty to Plaintiff and other members of the Nationwide Lender-Placed Insurance Class by (i) unilaterally using escrow funds to purchase force-placed flood insurance that Plaintiff and other class members did not want and were not required to obtain, and (ii) self-dealing and profiteering in connection with force-placed flood insurance policies that were purchased from escrow funds at the expense of Plaintiff and other class members.

91.     These actions were undertaken by WFB and WFHM in bad faith for their own benefit and/or the benefit of their affiliate (WFI), and were not intended to benefit Plaintiff or other borrowers.

92.     As a direct result of WFB's and WFHM's actions and their subversion of Plaintiff's interest to their own interests, Plaintiff and the Nationwide Lender-Placed Insurance Class have suffered injury from in the form of unnecessary and excessive escrow charges and a loss of funds from their escrow accounts.

93.    Plaintiff and the Nationwide Lender-Placed Insurance Class are entitled to damages for WFB's and WFHM's beach of their fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Nationwide Lender-Placed Insurance Class are entitled to punitive damages because WFB and WFHM acted in bad faith in deliberate and/or reckless disregard of their rights and Wells Fargo's obligation to hold their escrow funds in trust.

**SIXTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**(ASSERTED AGAINST WFB, WFHM, AND WFI)**

94.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

95.    Defendants and their affiliates have been unjustly enriched as a result of the conduct described in this Complaint and other inequitable conduct.

96.    Wells Fargo received a benefit in the form of kickbacks and commission payments in connection with force placed flood insurance.

97.    Retention of these benefits by Wells Fargo would be unjust and inequitable.  Federal law only allows lenders and servicers to "charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012(e)(2); *see also* 12 C.F.R. § 22.3. Defendants abused their discretion to pass through costs for force-placed flood insurance, by charging Plaintiff and other Nationwide Lender-Placed Insurance Class members amounts in excess of the net costs incurred by Defendants for such flood insurance and by retaining at least a portion of the premium payments as kickbacks, commissions or other compensation.

98.    The kickbacks, commissions and other compensation that Wells Fargo received in connection with force-placed flood insurance were not legitimately earned, and came at the ultimate expense of Plaintiff and other members of the Nationwide Lender-Placed Insurance Class who had flood insurance force-placed on them by Wells Fargo.

99.    Because it would be unjust and inequitable for Wells Fargo to retain such benefits, Plaintiff and the Nationwide Lender-Placed Insurance Class are entitled to restitution of all monies unjustly and inequitably retained.  Wells Fargo cannot retain these payments in good conscience.

<u>SEVENTH CLAIM FOR RELIEF</u>
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 Pa. Cons. St. § 201-1 *et seq*.)**
**(ASSERTED AGAINST WFB, WFHM, AND WFI)**

100.    Defendants' transactions and business interactions with Plaintiff and other Pennsylvania customers are subject to the requirements of Pennsylvania law, including the PAUTP-CPL, 73 Pa. Cons. St. § 201-1 *et seq*..

101.    The PAUTP-CPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. Cons. St. § 201-2(4).  The PAUTP-CPL also prohibits (1) "[k]nowingly misrepresenting that services, replacements or repairs are needed if they are not needed"; and (2) "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Cons. St. § 201-2(4)(xv), (xxi).

102.    Defendants pervasively violated the PAUTP-CPL during the Class Period, and continue to violate this statute, by virtue of their unfair, deceptive, and fraudulent

practice of demanding and/or force-placing excessive and unnecessary flood insurance on property owned Plaintiff and other Pennsylvania Class members in amounts greater than required by law, greater than Defendants' financial interest in their property, and contrary to the amounts agreed upon in the relevant loan and mortgage documents, without any reasonable basis or justification, and by intentionally misleading Plaintiff and other Pennsylvania Class members to believe that such amounts of insurance coverage are required.

103.    Defendants further violated the PAUTP-CPL during the Class Period, and continue to violate this statute, by virtue of their unfair, deceptive, and fraudulent practices in connection with force-placed flood insurance and escrow accounts, and by accepting commissions and/or arranging for commissions in connection with such insurance.

104.    Defendants knowingly and willfully engaged in such violations in bad faith and with fraudulent intent, for the purpose of (i) unfairly and unconscionably maximizing revenue from Plaintiff and other Pennsylvania Class members; (ii) generating interest, fees, commissions, and other compensation for Wells Fargo; (iii) providing a ready-made customer base for WFI; (iv) gaining unwarranted contractual and legal advantages; and (v) depriving Plaintiff and other Pennsylvania Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase flood insurance coverage in excess of the funds extended to them.

105.    Plaintiff and the Pennsylvania Class reasonably and justifiably relied on Wells Fargo to (among other things) fully, honestly, and fairly disclose the amount of

flood insurance that was required for their property under their mortgage agreements and federal law, and to interpret and/or apply such requirements reasonably and fairly in good faith.

106.    Plaintiff and the Pennsylvania Class also reasonably and justifiably relied on Wells Fargo to properly handle and manage their escrow accounts in good faith, and not make unnecessary or excessive expenditures out of their escrow accounts for Wells Fargo's own benefit.

107.    As a result of Defendants' violations of the PAUTP-CPL, Plaintiff and the Pennsylvania Class have suffered ascertainable losses and damages in the form of increased insurance premiums, escrow charges, interest payments, and/or other charges, and unnecessary burdens on their property rights.

108.    Plaintiff and the Pennsylvania Class are entitled to relief for Defendants' violations of the PAUTP-CPL, including but not limited to actual damages, statutory damages of $100 per violation, treble damages, costs, attorneys' fees, injunctive relief, declaratory relief, and additional legal or equitable relief as necessary or proper. *See* Pa. Cons. St. § 201-9.2.

## **PRAYER FOR RELIEF**

109.    WHEREFORE, Plaintiff, on behalf of herself and the Putative Classes, prays for relief as follows:

> A.    Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;
>
> B.    Designating Plaintiff's counsel as counsel for the Putative Classes;

C.   Designating Plaintiff as class representative of the Putative Classes;

D.   Issuing proper notice to the Putative Classes at Defendants' expense;

E.   Declaring that Defendants' conduct as alleged herein violated TILA, RESPA, and the PAUTP-CPL;

F.   Declaring that WFB's and WFHM's conduct as alleged herein breached the terms of their mortgage contracts and the implied covenant of good faith and fair dealing;

G.   Declaring that WFB's and WFHM's conduct as alleged herein breached their fiduciary duty to customers in the Nationwide Lender-Placed Insurance Class with escrow accounts;

H.   Declaring that Defendants' conduct as alleged herein was inequitable and that Defendants were unjustly enriched by their conduct;

I.   Declaring that Defendants acted willfully in deliberate or reckless disregard of applicable law and the rights of Plaintiff and the Putative Classes as alleged herein;

J.   Awarding appropriate equitable relief, including but not limited to restitution and an injunction requiring Defendants to reverse all unlawful, unfair, or otherwise improper charges for flood insurance coverage, allowing customers to close loans without first paying premiums for flood insurance that were not necessary or required by law, prohibiting Defendants from imposing unfair and unlawful flood insurance requirements on borrowers, prohibiting Defendants from earning commissions or other compensation for themselves or affiliated entities on force-placed flood insurance policies, and requiring Defendants to cease and desist from engaging in further unlawful conduct in the future;

K.   Awarding actual damages, statutory damages, punitive damages, and interest;

L.   Awarding reasonable attorneys' fees and costs to the full extent permitted by law; and

M.   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

27

## **DEMAND FOR JURY TRIAL**

110.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated:  November 28, 2011                  NICHOLS KASTER, PLLP

 /s/Kai Richter
Charles G. Frohman, MN Bar No. 0386695
Paul J. Lukas, MN Bar No. 22084X*
E. Michelle Drake, MN Bar No. 0387366*
Kai Richter, MN Bar No. 0296545*
Rebekah L. Bailey, MN Bar No. 0389599*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email:  frohman@nka.com
            lukas@nka.com
            drake@nka.com
            krichter@nka.com
            bailey@nka.com
*Admitted Pro Hac Vice

ATTORNEYS  FOR  PLAINTIFF  AND
THE PUTATIVE CLASSES

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| DESIREE MORRIS, individually and as a representative of putative classes, | : | **Civil Case No.: 2:11-cv-00474-DSC** |
| | : | |
| | : | **Judge David Stewart Cercone** |
| Plaintiff, | : | |
| | : | **ELECTRONICALLY FILED** |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., and | : | |
| WELLS FARGO HOME MORTGAGE, INC. | : | |
| | : | |
| Defendants. | : | |

---

### CERTIFICATE OF SERVICE

I, Kai Richter, hereby certify that on this 28th day of November, 2011, *Plaintiff's First Amended Class Action Complaint and Demand for Jury Trial* was filed electronically and is available for viewing and downloading from the ECF system of the United States District Court for the Western District of Pennsylvania.  The ECF System's electronic mailing service constitutes service on all parties who have consented to electronic service.


*/s/Kai Richter*