## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DESIREE MORRIS**, Individually and as a representative of the classes, | ) )<br>) |
| Plaintiff, | ) ) |
| v. | ) **2:11cv474**<br>) **Electronic Filing** |
| **WELLS FARGO BANK N.A.** , **WELLS FARGO HOME MORTGAGE, INC.**, and **WELLS FARGO INSURANCE, INC.**, | ) )<br>) )<br>) ) |
| Defendants. | ) ) |

## OPINION

Plaintiff commenced this action on behalf of herself and as a member of three putative classes seeking redress for alleged improper charges and expenses incurred as a result of unnecessary and unauthorized flood insurance placed on real estate that was purchased with a Federal Housing Administration ("FHA") mortgage. Presently before the court are defendants Wells Fargo Bank, N.A. ("W. F. Bank") and Wells Fargo Insurance, Inc.'s ("W. F. Insurance") motions to dismiss plaintiff's first amended class action complaint. For the reasons set forth below, the motions will be granted in part and denied in part.

## I.     Standard of Review

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "the court [is required] to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint fail to raise

plausibly, directly or inferentially, the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Id. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In contrast, pleading facts that are merely consistent with a defendant's liability is insufficient. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50. See also Twombly, 550 U.S. at 563 n. 8 (factual averments must sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)).

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element . . . [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008).

## II.    Background and Contentions

The facts taken in a light most favorable to the non-moving party are as follows.  On November 24, 2009, Desiree Morris ("plaintiff") obtained a FHA mortgage loan through Victorian Finance, LLC for $115,371.00.  W. F. Bank acquired the mortgage within a few months thereafter.  Wells Fargo Home Mortgage, an unincorporated subdivision of W. F. Bank, began to service the mortgage on or before February 1, 2010.  A principal balance of about $113,000.00 remained when the complaint was filed.

Plaintiff generally alleges that defendants "systematically" violated plaintiff and other class members' rights by "unfairly, unjustly, and unlawfully" force-placing flood insurance upon their property in excess of the amount (1) required by law and under their mortgages and (2) needed to protect W. F. Bank's financial interest(s).  Defendants "unfairly, unjustly, and unlawfully" profited from force-placing the insurance by charging more than the net costs expended in purchasing such insurance and by "directing kickbacks, commissions, and other compensation to [defendants] in connection with [the force-placed flood insurance]."

More specifically, plaintiff is required to maintain flood insurance under federal law because her property is located in a Special Flood Hazard Area ("SFHA").  Her mortgage agreement states:

> Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.

Pursuant to federal law and the above terms plaintiff obtained $118,000.00 of flood insurance coverage at the origination of her mortgage, which was deemed adequate by Victorian Finance at

closing and by W. F. Bank when it acquired the mortgage. Plaintiff increased her flood insurance to $129,800.00 upon renewal of her flood insurance policy in November 2010.

Commencing in December of 2010 plaintiff received several notices indicating she had less than the required amount of flood insurance under the mortgage and if she did not obtain additional insurance it would be purchased on her behalf and her escrow account would be charged. Plaintiff received a notice of deficiency dated December 9, 2010, authored by Wells Fargo Home Mortgage ("W. F. Home Mortgage"). The notification advised plaintiff that she was required to maintain "replacement cost coverage" up to the National Flood Insurance Program cap of $250,000.00, and if she did not obtain the additional insurance and provide proof of the same within 45 days, W. F. Home Mortgage would secure the additional coverage, which would be arranged by an "affiliate" of W. F. Bank, W. F. Insurance, at her expense. In addition, the notification stated that W. F. Bank would be compensated in connection with the lender-placed insurance and in nearly all cases flood insurance obtained by the borrower was less costly than that purchased by W. F. Home Mortgage.

Plaintiff received a "Notice of Temporary Flood Insurance Due to Deficient Coverage" on the same letterhead, which was dated February 8, 2011. This notification stated that plaintiff had "agreed to maintain flood insurance on [her] property in the amount and for the period required by [her] mortgage company[,]" reiterated the need to maintain full replacement cost coverage, advised that "we" have not received evidence of adequate insurance, and indicated that $94,000.00 in additional coverage had been purchased in the form of a 90 day binder (with an effective date of January 28, 2011) at the cost of $893.00, which would be charged to plaintiff's escrow account. The notification indicated plaintiff had 30 days to purchase the additional coverage and provide proof of such coverage, or a one-year policy would be obtained and W. F. Insurance would receive a commission for the insurance "we obtain."

Plaintiff received a "Notice of Flood Insurance Change in Coverage," dated March 3, 2011, which indicated that "a revised flood insurance policy would be issued" in place of the previous policy, for which W. F. Home Mortgage would be "reimbursed by the insurance company."

Plaintiff then received a second "Notice of Temporary Flood Insurance Due to Deficient Coverage," which was dated March 7, 2011. This notice was identical to the February 8, 2011, notice, and among other things it advised plaintiff that "you agreed to maintain insurance on your property in the amount and for the period required by your mortgage company." Enclosed was a 90-day binder for replacement flood insurance coverage of $82,200, issued by QBE, with a premium of $780.90, which was to be charged to plaintiff's escrow account. This notice also stated that a one-year insurance policy would be obtained if plaintiff did not obtain the additional "required" coverage and send proof of such coverage in 30 days. It further advised that "Wells Fargo Insurance, Inc. will receive a commission on the insurance we obtain." No explanation for the differences in coverage amounts and premiums was provided. Such additional coverage was thereafter obtained and W. F. Insurance did receive a commission in connection with the force-placed insurance.

Plaintiff avers that defendants knew or should have known that plaintiff was not "required" to purchase the additional flood insurance coverage based on the following:

1. the plain language of plaintiff's mortgage does not require flood insurance in excess of her principal balance;

2. the NFIA and its accompanying regulations do not require flood insurance in excess of a borrower's principal balance;

3. HUD does not require flood insurance in excess of a borrower's principal balance;

4. Victorian Finance did not require flood insurance in excess of plaintiff's principal balance upon originating her mortgage;

5

5. defendants held and serviced plaintiff's mortgage for ten months, without claiming that plaintiff was "required" to obtain flood insurance for the full replacement cost value of her home;

6. defendants did not and cannot identify any changes in federal law, the mortgage documents, or the circumstances surrounding the loan that justified defendants' representation that plaintiff's coverage suddenly was not adequate and was "less than the coverage required"; and

7. defendants' notice of temporary flood insurance and second notice of temporary flood insurance misrepresented the terms of plaintiff's mortgage, and fraudulently omitted to reference the relevant language of her mortgage, which only requires her to maintain insurance "against loss by floods to the extent required by the Secretary" of HUD.

Plaintiff's complaint advances causes of action against W. F. Bank for (1) violation of the Truth-In-Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and (2) breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. W. F. Insurance is named in the counts for violation of RESPA and UTPCPL and the common law claim for unjust enrichment.

Defendants move to dismiss on a multitude of bases. Generally, W. F. Bank and W. F. Home Mortgage (collectively "W. F. Bank") contend that W. F. Bank was authorized under the mortgage to require the lender to maintain flood insurance "in the amounts and for the periods" it determined to be necessary, subject to the $250,000.00 cap ("the cap") established by the National Flood Insurance Act, 42 U.S.C. §§ 4001 − 4129 ("NFIA"). From their perspective, the mortgage is an FHA form mortgage that tracks the applicable legislation and regulations. The first two sentences of the mortgage's hazards clause provision properly is interpreted to give W. F. Bank the authority to determine the necessary amount of flood insurance, while the third sentence sets the minimum coverage it must require the mortgagor to maintain. As a result, there can be no claims that are premised on a breach of the mortgage (i.e., breach of contract, breach

of the covenant of good faith and faith dealing, and breach of fiduciary duty). Furthermore, TILA did not place any pre-loan or post-loan disclosure requirements on W. F. Bank and the transaction(s) in question did not constitute a "settlement service" within the scope of the anti-kickback and fee-splitting provision of RESPA. W. F. Bank did not owe a fiduciary duty to plaintiff under Pennsylvania law because the language of the agreement did not create a trust with regard to the escrow funds. It administered the escrow funds in accordance with the agreement and the fiduciary duty claim is barred by "the gist of the action" doctrine in any event. The unjust enrichment claim cannot stand because the parties' relationship is founded on a written agreement and plaintiff cannot establish that she conferred a benefit on W. F Bank or that any fee it received was "unjust" or "inequitable" under the circumstances. Finally, W.F. Bank argues that plaintiff's UTPCPL claim fails because it acted pursuant to the terms of the mortgage, plaintiff cannot identify any misrepresentation upon which she justifiably relied and the economic loss doctrine bars any such tort-based recovery.

W. F. Insurance generally contends that plaintiff has not identified any specific conduct attributable to it and therefore her complaint fails to meet the federal pleading standards. Plaintiff's RESPA claim is untimely because all referenced conduct occurred more than a year after closing. Plaintiff cannot establish the elements of an unjust enrichment claim for the same reasons identified by W. F. Bank. In addition, the identified conduct constituted nothing more than a statutory undertaking authorized for plaintiff's benefit, notice was given for the fees incurred, and all measures merely constitute a common form of everyday business. Finally, W. F. Insurance argues that plaintiff's UTPCPL claim fails because it had no interaction with plaintiff and therefore it could not have made a representation upon which she could rely, and the economic loss doctrine bars any recovery in all events.

In response, plaintiff argues that the mortgage contains a separate provision governing flood insurance and therefore the discretion retained by W. F. Bank under the general hazards provision is inapplicable. The flood insurance provision requires the mortgagor to maintain insurance up to the lessor of the principal balance on the loan or the cap. W. F. Bank was without authorization to demand that the property be insured for more than its secured interest and therefore its demands and actions in force-placing insurance above this level did constitute a breach. Plaintiff's breach of the covenant of good faith and fair dealing claim stands because W. F. Bank demanded more coverage than necessary to protect its interests and comply with federal law and it did so for the purpose of self-dealing, i.e., generating income for itself and its affiliates. W. F. Bank's conduct violated TILA because it misrepresented the terms of the legal obligations between the parties and no new credit disclosures were made when those terms were changed unilaterally after the fact. These violations occurred when W. F. Bank made the changes to the mortgage agreement and therefore the TILA claim is timely. W. F. Bank's conduct also constituted mismanagement of plaintiff's escrow account by exceeding the contractual authority governing its use and doing so for the purpose of self-dealing, which supports a breach of fiduciary claim. The provision of flood insurance is a "settlement service" under "HUD's" regulations and therefore W. F. Bank's receipt of compensation constitutes an actionable kick-back under RESPA and its regulations. The procurement of force-placed insurance and the propriety of commissions for such insurance are beyond the express provisions of the mortgage and therefore equitable principles govern, thereby making a claim for unjust enrichment appropriate. Finally, plaintiff maintains that a valid UTPCPL claim as been stated against W. F. Bank because its conduct was deceptive and transcended any authority it had under both the mortgage agreement and Pennsylvania law, and the implemented scheme undermined established policies in the NFIA, RESPA and HUD's regulations.

Plaintiff argues that W. F. Insurance properly has been included on the claims relating to defendants' joint commissions scheme. An unjust enrichment claim is proper against W. F. Insurance because plaintiff's escrow funds were the source of the commission it received, the fore-placed insurance was unauthorized and therefore so was the generated commission, and notifying plaintiff that she needed to take action to avoid defendants' scheme does not advance a valid defense. A RESPA claim can be maintained against W. F. Insurance because flood insurance is an identified settlement service and such a serve does not become operative until after the closing, it is provided "in connection with" the settlement of a mortgage, it was a service reflected on the settlement statement, a demand for the unauthorized increase was made prior to the expiration of the first year's flood insurance policy, W. F. Insurance enjoyed a fee and did not perform a service at closing, the transaction increased the amount plaintiff was required to pay for insurance in connection with the closing, and there is ample authority recognizing that RESPA's prohibitions can reach conduct that is premised on an obligation that arose at and was brought into existence by the closing. Finally, plaintiff contends that a UTPCPL claim has been stated against W. F. Insurance because defendants implemented a deceptive scheme to impose an obligation that did not exist under the mortgage or law for their own financial benefit and W. F. Insurance profited from the purchase that was force-placed on plaintiff, and the economic loss doctrine does not displace consumer protection claims, particularly where, as here, the conduct transgresses established boundaries under federal statutes and regulations.

### III.   Breach of Contract

Plaintiff has set forth a claim for breach of contract against W. F. Bank. Plaintiff's mortgage agreement states:

> Borrower shall insure all improvements on the Property, whether now in existence
> or subsequently erected, against any hazards, casualties, and contingencies,
> including fire, for which Lender requires insurance. This insurance shall be

9

maintained in the amounts and for the periods that Lender requires.  Borrower
shall also insure all improvements on the Property, whether now in existence or
subsequently erected, against loss by floods to the extent required by the
Secretary.

Plaintiff, focusing on "to the extent required by the Secretary" in the third sentence, alleges that

W. F. Bank breached the mortgage agreement by forcing plaintiff to obtain flood insurance in

excess of the principal balance, which is all that is "required" by the Secretary.  W. F. Bank,

focusing on "in the amounts and for the periods that Lender requires" in the second sentence,

argues that it had discretion to determine the amount of flood insurance coverage required up to

the cap.

It is well established that the intent of the parties to a written agreement is to be

ascertained in the first instance from the writing itself, and where the words contained in the

written instrument are clear and unambiguous, the intent as reflected in the expressed language

chosen by the parties must be given effect.  Martin v. Monumental Ins. Co., 240 F.3d 223, 232-

33 (3d Cir. 2001).  "[T]he focus of interpretation is upon the terms of the agreement as

manifestly expressed, rather than as, perhaps, silently intended."  Steuart v. McChesney, 444

A.2d 659, 661 (Pa. 1982).  Ascertaining the intent of the parties is a question of law under such

circumstances.  Seven Springs Farm, Inc. v. Croker, 801 A.2d 1212, 1216 (Pa. 2002) (quoting

Community College of Beaver County v. Community College of Beaver ,, 375 A.2d 1267, 1275

(Pa. 1977)); Restatement (Second) of Contracts § 212 Comment d.   In contrast, when the

language chosen by the parties is ambiguous, deciding the intent of the parties becomes a

question of fact for a jury.  Community College of Beaver County, 801 A.2d at 1275; Allegheny

Intern., Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994).

"[A] contract is ambiguous under Pennsylvania law 'if, and only if, it is reasonably or

fairly susceptible of different constructions and capable of being understood in'" more than one

sense.  Glenn Distributors v. Carlisle Products, 297 F.3d 294, 300 (3d Cir. 2002) (quoting

Duquesne Light Co. v. Westinghouse Electric Corp., 66 F.3d 604, 614 (3d Cir. 1995)); accord

Hutchison v. Sunbeam Coal Co., 519 A.2d 385, 390 (Pa. 1986) (A contract contains an

ambiguity "if it is reasonably susceptible of different constructions and capable of being

understood in more than one sense.").  Such an ambiguity may arise where the provisions or

terms used "are obscure in meaning through indefiniteness of expression" or have a double

meaning.  Id.

       In resolving a dispute about the parties' intent the court is to avoid ascribing an

interpretation that conflicts with the plain meaning of the language used by the parties or

otherwise alters the clear import of the contract.  Amoco Oil Co. v. Snyder, 478 A.2d 795, 798

(Pa. 1984).  Similarly, provisions of a contract are not to be treated as surplusage or redundant if

any reasonable meaning consistent with the other parts can be given.  Continental Ins. Co. v.

McKain, 820 F. Supp. 890, 897 (E.D. Pa. 1993),  aff'd, 19 F.3d 642 (3d Cir. 1994); Sparler v.

Firemen's Ins. Co., 521 A.2d 433, 438 (Pa. Super. 1987).

       Here, "to the extent required by the Secretary" in the third sentence reasonably can be

read to set a floor or ceiling on the amount of required flood insurance coverage.  As more fully

set forth in Wulf v. Bank of America, 798 F. Supp.2d 586 (E.D. Pa. 2011), the second sentence

upon which defendant relies is a general statement referring to all hazard insurance and not

specifically to flood insurance.  Id. at 592.  The third sentence addresses flood insurance and

when read in conjunction with the NFIA and its regulations, it can be interpreted to set as "the

minimum" the amount required by the Secretary.[1]  Id. at 593.  Under this interpretation the

---

[1] The NFIA provides:

11

Secretary, and thus by extension the lender, can require more. Id. But it is less than clear that any provisions of the mortgage agreement or notices supplied at closing indicated that the amount of flood insurance coverage was subject to being increased beyond that needed to cover the principal balance, which was what was required at closing.

In contrast, the third sentence can be interpreted to limit the amount of flood insurance to the lesser of the principal balance or the statutory cap. Id. at 592-95. Under this interpretation, the statutory provisions and regulations operate as setting the floor or minimum required. But the use of the phrase "to the extent required by the Secretary" signifies that the parties' understanding was to make that floor operate as the ceiling in their agreement. Cf. id. at 588-89 ("The Court agrees with the defendants that the outstanding principle balance of the loan is the minimum, not maximum under the HUD regulations. However, one could interpret to the extent "required" by the Secretary to refer to the minimum, which would be the outstanding balance of

---

Each Federal entity for lending regulation ... shall by regulation direct regulated lending institutions not to make, increase, extend, or renew any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Director as an area having special flood hazards and in which flood insurance has been made available under the [NFIA] ... unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance **in an amount at least equal to** the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, **whichever is less**.

42 U.S.C. § 4012a(b)(1) (emphasis added). The concomitant HUD regulation provides:

§ 203.16a Mortgagor and mortgagee requirement for maintaining flood insurance coverage.

(c) The flood insurance must be maintained during such time as the mortgage is insured **in an amount at least equal to** either the outstanding balance of the mortgage, less estimated land costs, or the maximum amount of the NFIP insurance available with respect to the property improvements, **whichever is less**.

24 C.F.R. § 203.16a (emphasis added).

the loan.") (McLaughlin, Judge); <u>accord</u> <u>Skansgaard v. Bank of America, N.A.</u>, No. C11-988-RJB (W. D. Wa. Oct. 13, 2011) ("to the extent required by the Secretary" can be interpreted as reflecting the parties' understanding that the Secretary's minimums establish the limits which the lender can insist upon").

At the very least, plaintiff's interpretation is tenable and she has alleged sufficient facts to survive a Rule 12(b)(6) motion on her breach of contract claim.

## IV.    Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff's attempt to maintain an independent cause of action for breach of the covenant of good faith and fair dealing is misplaced.  The covenant is presumed to exist in every contract governed by Pennsylvania law.  <u>Donahue v. Federal Express Corp.</u>, 753 A.2d 238, 242 (Pa. Super. 2000).  Nevertheless, the covenant operates only "as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action" and "cannot be used to override an express contractual term."  <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 91-92 (3d Cir. 2000) (citing <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 617-18 (3d Cir.1995) and <u>USX Corp. v. Prime Leasing, Inc.</u>, 988 F.2d 433, 438 (3d Cir.1993)).  Thus, an implied duty of good faith claim cannot stand "where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.'"  <u>Id.</u> at 92 (quoting <u>Parkway Garage, Inc. v. City of Philadelphia</u>, 5 F.3d 685, 701-02 (3d Cir. 1993)).  It likewise cannot be used where the parties' dispute is premised on expressed obligations they chose to address in their agreement.  <u>Id.</u> at 93; <u>accord</u> <u>LSI Title Agency, Inc. v. Evaluation Servs., Inc.</u>, 951 A.2d 384, 391-92 (Pa. Super. 2008) (Pennsylvania does not recognize an action for breach of the covenant of good faith and fair dealing that is independent of a breach of contract claim.).

Here, plaintiff's contentions concerning the duty of good faith relate to matters expressly addressed in the mortgage and plaintiff has set forth a claim for breach of contract based on those

operative provisions.  It follows that an independent cause of action cannot be maintained for breach of the duty of good faith.

Notwithstanding the above ruling, plaintiff's allegations under the breach of good faith claim are an extension of and augment those advanced in the breach of contract claim.  For instance, the allegations in the breach of contract claim assert that plaintiff was forced to acquire insurance coverage in an amount greater than required under the contract, while the breach of good faith claim alleges, in addition, that W. F. Bank abused its discretion by requiring greater insurance coverage than necessary in order to advance its own interests.  Therefore, to the extent the breach of good faith claim contains allegations conceptually distinct from those in the breach of contract claim, they will be treated as being a part of and augmenting the breach of contract claim.

## V.    Unjust Enrichment

Plaintiff asserts that both defendants unjustly were enriched by receiving kickbacks and commissions that did not represent costs incurred in acquiring the force-placed insurance.  W. F. Bank argues that this claim cannot be sustained against it because the parties' relationship is founded on a written agreement.  We agree.

"By its nature, the doctrine of quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists."  Lackner v. Glosser, 892 A.2d 21, 34 (Pa. Super. 2006) (citing Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super.1999)).  Here, the unjust enrichment claim against W. F. Bank is based upon the force-placed insurance, and a provision addressing flood insurance is contained in the mortgage agreement.  Because the breach of contract claim has the potential to provide plaintiff with complete relief, an unjust enrichment claim currently cannot be maintained against W. F. Bank.  Therefore, W. F. Bank's motion to dismiss the unjust

enrichment claim will be dismissed without prejudice to its reinstatement in the event further proceedings lead to an equitable basis for asserting the claim.

W. F. Insurance argues (1) that plaintiff fails to allege she conferred a benefit upon it; and (2) any benefit it received was not "unjust" because (a) plaintiff received notice that insurance would be purchased on her behalf and it would receive a commission as part of that process if she failed to purchase the additional insurance; and (b) the force-placed insurance was authorized by the mortgage agreement and did not violate any law. Plaintiff maintains that her funds were the source of the unauthorized commission paid to W. F. Insurance and notice of an unauthorized measure does not make it authorized or otherwise lawful.

To advance a claim of unjust enrichment or quasi-contract under Pennsylvania law, a plaintiff must allege the following elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) there was acceptance and retention of the benefit under circumstances that make it inequitable for the defendant to retain it without payment. Global Ground Support, LLC v. Glazer Enterprises, Inc., 581 F. Supp.2d 669, 675 (E.D. Pa. 2008) (citing Com. ex. rel. Pappert v. TAP Pharm. Prods., Inc., 885 A.2d 1127, 1137 (Pa. Commw. 2005) and Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985)). "The polestar of [this] inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." Id. (citing Limbach v. City of Phila., 905 A.2d 567, 577 (Pa. Commw. 2006)). In other words, recovery is appropriate where there is "*both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." Id. (quoting Samuels v. Hendricks, 445 A.2d 1273, 1275 (Pa. Super. 1982) quoting Meehan v. Cheltenham Twp., 189 A.2d 593, 595 (Pa. 1963) (emphasis in original)).

Moreover, a plaintiff "need not have directly dealt with each defendant in order to allege a claim of unjust enrichment . . . ." Global Ground Support, 581 F. Supp.2d at 676. "The claim

simply requires that a plaintiff 'confer' benefits on a defendant; there is no requirement that the plaintiff "directly confer" those benefits." Id. (citing Baker v. Family Credit Counseling Corp., 440 F. Supp.2d 392, 420 (E.D. Pa. 2006); Com. ex rel. Pappert v. Tap Pharm. Products, Inc., 885 A.2d 1127, 1137-38 (Pa. Commw. 2005) (a plaintiff does not have to plead that it directly conferred a benefit in order to maintain an unjust enrichment claim); and D.A. Hill Co. v. CleveTrust Realty Investor., 573 A.2d 1005, 1009 (Pa. 1990) (subcontractor could recover from owner on unjust enrichment theory even if they did not have a direct contractual relationship)). A showing that a defendant either "wrongfully secured or passively received a benefit" under circumstances that make its retention unconscionable is sufficient. Torchia, 499 A.2d at 582.

Plaintiff has stated an unjust enrichment claim against W. F. Insurance. First, plaintiff has alleged that the commission it received came at her "ultimate expense." In addition, the deficient coverage notices indicated that W. F. Insurance would receive a benefit from the amounts charged to plaintiff's escrow account. These allegations collectively are sufficient to create a sufficient showing that there was a conferral of a benefit despite the fact that the funds were not paid to W. F. Insurance directly. Against this backdrop, W. F. Insurance's assertion that it is entitled to dismissal because it had no direct dealings with plaintiff is unavailing.

Second, whether the force-placed insurance was authorized under the mortgage agreement remains at issue. A showing that the commission was generated from a transaction that clearly transcended the mortgage agreement and applicable law and regulations may supply the circumstances needed to establish that its retention would be unjust. Thus, taking the factual allegations as true, plaintiff has advanced enough of a factual basis to make her unjust enrichment claim against W. F. Insurance plausible. Therefore, its motion to dismiss plaintiff's unjust enrichment claim will be denied.

## VI.     Breach of Fiduciary Duty

Plaintiff alleges that W. F. Bank's conduct in force-placing insurance in the interest of self-dealing and at her expense breached a fiduciary duty. W. F. Bank argues that no fiduciary duty existed because the escrow funds were not held in trust and even if a fiduciary duty did exist, the claim would be barred by the gist of the action doctrine.

Plaintiff's complaint fails to allege sufficient facts to support a fiduciary duty claim. A fiduciary relationship is not created merely by the execution of a mortgage. Buchanan v. Century Federal Sav. and Loan Ass'n, 542 A.2d 117, 121 (Pa. Super. 1988) (citing Restatement (Second) of Trusts § 12, comment g); see also Hansford v. Bank of America, 2008 WL 4078460, * 14 (E. D. Pa. August 22, 2008) ("No fiduciary relationship is created merely by the execution of a mortgage."). And merely creating an escrow account as part of servicing a mortgage falls short of doing so. Wiernik v. PHH U. S. Mortgage Corp., 736 A.2d 616, 623 (Pa. Super. 1999). Instead, the mortgage agreement must be viewed as whole to determine whether the parties manifest an intent to create such a relationship. Buchanan, 542 A.2d at 120.

There are no talismanic formulas that create or disavow the creation of a trust. Id. Use of the term "trust" or a designation that the funds are to be "held in trust" is not dispositive. Id. It is the intention of the parties as evidence by their agreement that controls. Id.; Wiernik, 736 A.2d 623 (mortgage agreement that did not reflect an intent to place escrow funds in trust failed to give rise to fiduciary relationship).

Plaintiff seeks to establish a fiduciary relationship based on the presence of a "standard escrow provision." Plaintiff avers that the mortgage requires monthly payment of funds for the payment of insurance premiums, including flood insurance. These funds are to be "held in escrow." These averments fall short of creating a fiduciary relationship. Consequently, plaintiff's breach of fiduciary claim is subject to dismissal.

Moreover, even assuming a fiduciary duty exists, the claim is barred by the gist of the action doctrine. The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." eToll, Inc. v. Ellias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002). "As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." Id.

In general, the difference between contact claims and tort claims depends upon the origin of the duties alleged to have been breach by the defendant's conduct. "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992)).

The two types of causes of action are not mutually distinct. Id. Instead, it is "possible that breach of contract also gives rise to an actionable tort." Id. But "to be construed as in tort, however, the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral." Id. (quoting Bash, 106 A.2d at 829). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Id. (quoting Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002)).

Whether the gist of the action doctrine applies to bar a claim is a question of law. Id. A number of courts have observed:

The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.

"Gist" is a term of art in common law pleading that refers to the "essential ground or object of the action in point of law, without which there would be no cause of action." Blacks Law Dictionary 689 (6th ed. 1990). "Action" is defined by

18

Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law . . . . The "gist of the action" test, then, is a general test concerned with the "essential ground," foundation or material part of an entire "formal complaint" or lawsuit.

eToll, 811 A.2d at 15 (quoting American Guar. and Lia. Ins. Co., v. Fojanini, 90 F. Supp.2d 615, 622-23 (E.D. Pa. 2000)).

Courts have applied the gist of the action doctrine to bar tort claims in four separate settings: (1) were the claims arise from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where a tort claim essentially duplicates a breach of contract claim or its success is wholly dependent on the terms of a contract. eToll, 811 A.2d at 20.

Here, the parties' obligations regarding the escrow account and the maintenance of flood insurance on the property arise from the mortgage agreement, they chose to address the mutual duties regarding the same through the terms of the contract and their contractual dispute encompasses the fundamental aspects of their disagreement. It follows that the parties' dispute is defined by their contractual obligations and not by the larger social policies embodied in the law of torts. Such circumstances warrant the application of the gist of the action doctrine. Therefore, W. F. Bank's motion to dismiss plaintiff's breach of fiduciary duty claim will be granted for this reason as well.

## VII.    TILA

Plaintiff contends that W. F. Bank violated TILA by misrepresenting the amount of flood insurance she was required to maintain and by adversely changing the terms of the mortgage agreement after the fact without proper disclosures or consent. She further asserts that her TILA claim accrued when defendants force-placed the insurance and thus her claim is timely under TILA's one year statute of limitations.

W. F. Bank argues that it had no disclosure obligations at or before the consummation of plaintiff's mortgage because it was not the initial creditor and the limited disclosure requirements that apply post-consummation (i.e., (1) as part of refinancing; (2) as part of a loan assumption; or (3) where there is a change in the interest rate) are inapplicable.  It reasons that TILA draws distinctions between open and closed-end credit transactions, and plaintiff has failed to identify any basis for imposing an obligation to provide post-consummation disclosures in the instant closed-end credit transaction.[2]  From its perspective plaintiff's TILA claim is legally deficient because it is beyond the scope of the statute.

W. F. Bank's content that the conduct in question can be viewed only as a non-regulated post-consummation transaction is wide of the mark.  The weight of authority recognizes that force-placing unauthorized insurance constitutes a new credit transaction involving new finance charges within the scope of 12 C. F. R. § 226.18 where the amount of the plaintiff's indebtedness is increased.

By enacting TILA, "Congress sought to remedy the 'divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them.'"  Smith v. Fidelity, 898 F.2d 896, 897 (3d Cir. 1989) (quoting Johnson v. McCrackin–Sturman Ford, Inc., 527 F.2d 257, 262 (3d Cir.1975)).  The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him."  15 U.S.C. § 1601(a).   As a remedial statute designed to "balance the scales 'thought to be weighed in favor of lenders,'" TILA "is to be liberally construed in favor

---

[2] W. F. Bank acknowledges that plaintiff has identified cases recognizing that such disclosure requirements for force-placed insurance can arise for open-end credit transactions such as a home equity line of credit ("HELOC"), but argues that TILA contains no similar disclosure requirement for closed-end mortgages.

of borrowers." Smith, 898 F.2d at 897 (quoting Bizier v. Globe Financial Services, 654 F.2d 1, 3 (1st Cir.1981)).

TILA "requires a creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights ... and it prescribes civil liability for any creditor who fails to do so[.]" Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 54 (2004). The statute charges "the Federal Reserve Board with implementation of the Act, and the agency has imposed even more precise disclosure requirements via Regulation Z," which is codified at 12 C.F.R. §§ 226.1 et seq. Arnett v. Bank of America, N.A., -- F. Supp.2d --, 2012 WL 2848425, *13 (D. Ore., July 11, 2012) (quoting Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir.2009) and citing 15 U.S.C. § 1607). "In particular, 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, which govern closed-end transactions such as residential home loans, require that the creditor must disclose the credit's 'finance charge' before 'the credit is extended.'" Id. (citing 15 U.S.C. §§ 1638(a)(3), 1638 (b)(1); 12 C.F.R. §§ 226.17(b), 226.18(d)) (foot notes omitted).

Plaintiff relies on the line of authority commencing with Travis v. Boulevard Bank N.A., 880 F. Supp. 1226 (N.D. Ill. 1995), which has recognized unauthorized force-placed insurance as a new credit transaction under TILA. In Travis, the defendant bank and the plaintiffs entered into a retail installment sales contract to finance the purchase of a car. Id. at 1231. After consummation, the bank purchased a variety of additional and gap insurance coverage protecting its interests in the event of default or loss and charged the amount of the premiums to the plaintiffs' existing debt. Id. at 1229. The "plaintiffs argued that these charges constituted new 'finance charges,' and that these new finance charges constituted a new credit transaction requiring [the] defendant to make new disclosures" under TILA. Id. The Travis court held that "the Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of

the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction." Id.  It reasoned that unauthorized force-placed insurance would constitute a new "transaction" that involved a new "finance charge" and therefore would fall within the scope of 12 C.F.R. § 226.18.  Id. at 1230 (citing Bermudez v. First of Americ Bank Champion, 860 F. Supp. 580, 601 (N.D. Ill. 1994) and 12 C.F.R. § 226.18).

As noted in Arnett, several cases have endorsed and followed Travis.  Arnett, 2012 WL at *14 (citing Begala v. PNC Bank, Ohio, Nat. Ass'n, 163 F.3d 948, 951 n. 1 (6th Cir.1998) ("Begala I") (Travis "correctly concluded that the insurance purchase 'and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction'"); Wulf v. Bank of Am., N.A., 798 F. Supp.2d 586, 599 (E.D. Pa. 2011); and Vician v. Wells Fargo Home Mortg., 2006 WL 694740 (N.D. Ind. Mar. 16, 2006)); see also Begala v. PNC Bank, Ohio, Nat. Ass., 214 F.3d 776, 780 (6th Cir.2000) ("Begala II") (finding that Travis required new disclosures because the bank increased the principal amount of the plaintiffs' indebtedness).  The court in Arnett likewise indicated its willingness to follow Travis if the Arnetts could specifically allege that their indebtedness had been increased by the defendant bank.  Id. at *14 & n.15.

Plaintiff also relies on Hofstetter v. Chase Home Fin., LLC, 751 F. Supp. 1116 (N.D. Cal. 2010), where the court applied the principles in Travis to force-placed insurance in a HELOC.  The court in Hofstetter relied on 12 C.F.R. § 226.5b(f), which is applicable to open-end credit transactions, and held that charging for insurance premiums that adversely change the terms of the mortgage agreement without authorization can give rise to liability under TILA.

In its reply brief W. F. Bank argues that Hofstetter is distinguishable because it was based on TILA's provisions governing open-end HELOCs, which are not at issue here, and there is no analogous disclosure requirements for closed-end loans.  We disagree.

22

Defendant's position ignores that the insurance can be found to be force-placed without authorization and in violation of the mortgage agreement. As Judge Mendez observed in Gooden v. SunTrust Mortgage, Inc., 2012 WL 996513 (E.D. Cal. March 23, 2012), "[t]he law treats force placed insurance coverage that exceeds that required in the loan agreement differently." Id. at *5. In that event, the insurance is no longer exempt from disclosure as part of the finance charge under 12 C.F.R. § 226.4(d)(2)(i) and must be disclosed in accordance with 12 C.F.R. § 226.4(d)(2)(ii). In turn, the finance charge has changed, as has the total amount of indebtedness where the mortgagor is charged for the insurance under the purported terms of the mortgage. New and additional credit is extended when the premium is charged to the mortgagor. It is this change of events that constitutes a "new" transaction under the TILA, see 12 C.F.R. § 226.18 ("For each transaction, the creditor shall disclose the following information as applicable . . ."), and requires new disclosures to account for the new finance charge under 12 C.F.R. § 226.18(d), the amount financed (where any unpaid escrow account balance is chargeable to the loan principal) under 12 C.F.R. § 226.18(b), and the new insurance requirements under 12 C.F.R. § 226.18(n); cf. Vivian, supra at *5 ("Similarly, Plaintiffs have alleged that Wells Fargo did not make the required disclosures when it allegedly force-placed insurance on their account. As in Travis, Plaintiffs may be able to show that a new disclosure was triggered in this case under section 226.18. Consequently, although Plaintiffs may have failed to state a TILA claim under section 226.20 of Regulation Z, the Court finds that Plaintiffs have certainly stated a TILA claim under section 226.18 of Regulation Z."); Gooden, supra, at *7 (force-placed coverage that potentially exceeds the coverage required under the NFIA and mortgage agreement "is an impermissible change of terms in violation of TILA."). While the recent cases have not expounded on these principles in great detail, the sound reasoning in Travis and its progeny

recognize as much and compel the denial of W. F. Bank's motion to dismiss plaintiff's TILA count.

## VIII.   RESPA

Plaintiff alleges that the force-placed flood insurance constituted a regulated "settlement services" and defendants violated RESPA by receiving prohibited kickbacks and unearned fees in conjunction therewith.  W. F. Bank contends that the transactions are post-closing and therefore beyond the reach of  12 U.S.C. § 2607.  W. F. Insurance posits that more than a year passed since the settlement of plaintiff's mortgage and therefore any claim under RESPA is untimely.

RESPA prohibits receipt of unearned fees and commissions incident to "settlement service[s]."  12 U.S.C. § 2607 (2006).  "Settlement service[s]" are defined as "any service[s] provided *in connection with* a prospective or actual settlement, including . . . [p]rovision of services involving hazard, flood, or other casualty insurance or homeowner's warranties . . . [.]" 24 C.F.R. § 3500.2(b) (emphasis added).  "Settlement" is defined as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan.  This process may also be called 'closing' or 'escrow' in different jurisdictions." Id.

Plaintiff's contention that the force-placed insurance was regulated by RESPA is misplaced.  As noted, RESPA regulates the receipt of fees in connection with a real estate settlement.  The weight of authority holds that services that are not provided as part of the settlement or closing are beyond the scope of the statute.  See McNealry v. Chase Bank, 2012 WL 1029502 (N.D. Cal. March 26, 2012) (defendants force-placing insurance upon the lapse of the borrower's coverage after the loans had been closed did not constitute the provision of services "in connection with" the closing of the loans); Lass v. Bank of America, 2011 WL

24

3567280, *5-6 (D. Mass. Aug.11, 2011) (same) (collecting cases in support).  In other words, RESPA does not regulate "post-settlement fees paid by mortgagors after they have purchased their houses."  Arnett, supra at *15; Guebara v. Saxon Mortgage, 2011 WL 1670762, *4 (E.D. Cal. May 3, 2011) ("Where the fees or charges at issue are imposed after settlement, RESPA is inapplicable.") (collecting cases).

Here, plaintiff essentially acknowledges that the initial policy she purchased in order to close on the mortgage agreement had expired before defendants force-placed the insurance on her property.  Plaintiff avers she "renewed" the policy approximately one year after her closing date of November 24, 2009.  First Amended Complaint at ¶¶ 16, 20.  It was December of 2009 when plaintiff received her first deficiency notice.  Id. at ¶ 21.  It was February of 2011 when she received notice that the first insurance had been force-placed with an effective date of January 28, 2011.  Id. at ¶¶ 26-29; Exhibit B (Doc. 52-3) to Defendant W. F. Insurance's Motion to Dismiss Plaintiff's Amended Complaint.[3]

Plaintiff points out that she received the first notice from W. F. Bank while the first year flood insurance policy required at closing was still in effect.  In addition, defendants began to take action within the year reflected in the "Initial Escrow Account Disclosure Statement," which "laid out" payments from the escrow account from January through December of 2010.  She posits that the inconsistent demand received in December of 2010 is sufficient to show the force-placed insurance was "in connection with" the settlement.

---

[3] In general, a court may not consider matters extraneous to the pleadings in ruling on a motion to dismiss.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).  It may, however, consider an undisputedly authentic document if the plaintiff's claims are based on that document.  In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation, 7 F.3d 357, 367 n.9 (3d Cir. 1993).

Defendants' conduct is beyond the reach of RESPA. Formal action pursuant to the December 2010 demand was not taken until late in January of 2011. Plaintiff's allegations make clear it was not until then that defendants force-placed the insurance, extended the credit needed for the premiums, and received commissions and fees in conjunction therewith. It was this conduct that had the potential to violate RESPA, and it occurred beyond the one year disclosure statement provided at closing and the first year of flood insurance needed in conjunction therewith. The change in terms, force-placed insurance and extension of credit giving rise to the fees having occurred after the initial policy required to close on plaintiff's loan had to be renewed and beyond the year reflected in the initial disclosure statement is sufficient to place the transaction(s) beyond the reach of RESPA. Cf. Arnett, supra at *15 (insurance force-placed on property two years after closing was beyond the reach of RESPA); Fitch v. Wells Fargo Bank, N.A., 709 F. Supp.2d 510, 514-15 (E.D. La. 2010) (fees charged to escrow account for broker price opinion five years after closing did not constitute a "real estate settlement service" under RESPA). Consequently, defendants' motions to dismiss this claim must be granted. [4]

## IX. UTPCPL

Finally, plaintiff claims that W. F. Bank and W. F. Insurance violated the UTPCPL by force-placing unauthorized flood insurance on her property and by accepting or arranging for commissions in connection therewith. W. F. Bank argues that it was acting in accordance with

---

[4] Plaintiff's arguments to the contrary are unavailing. Under plaintiff's approach, RESPA would continue to regulate the mortgagee's actions with regard to all flood and hazard insurance as well as a significant number of "homeowner's warranties" during the entire life of the mortgage. Such an expansion clearly is beyond the temporal scope established by the statute and regulations, which limit RESPA to a settlement service provided in connection with a "settlement" or "closing" of a real estate transaction. Cf. Fitch, supra, at *514 ("If Congress intended § 2607 to apply to all real estate services regardless of when they occur, it would not have limited § 2607 to only real estate settlement services.").

the mortgage agreement, made no misrepresentations and the claim is barred by the economic loss doctrine.  W. F. Insurance argues that plaintiff fails to allege any misrepresentations attributable to it and the claim is barred by the economic loss doctrine in any event.

Plaintiff's UTPCPL claim is barred by the economic loss doctrine.  The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract."  <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 671 (3d Cir. 2002) (quoting <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir.1995)).  It is only "where the alleged breach arises from a social policy or standard [as opposed to the parties' agreement], [that] the tort remedy is appropriate."  <u>Wulf</u>, 798 F. Supp.2d at 595.

In <u>Werwinski</u>, the United States Court of Appeals for the Third Circuit predicted that the Pennsylvania Supreme Court would adopt the economic loss doctrine and apply it in cases involving individual consumers asserting claims of fraudulent misrepresentation and concealment.  286 F.3d at 671-74.  In other words, a plaintiffs may bring fraud claims "only if the fraud is 'extraneous to the contract,' not 'interwoven with the breach of contract.'"  <u>Id.</u> at 676 (quoting <u>Huron Tool & Engineering Co. v. Precision Consulting Servs., Inc.</u>, 532 N.W.2d 541, 545 (Mich. Ct. App. 1995)).  The court further held that the same policy considerations justify the application of the economic loss doctrine to claims brought pursuant to the UTPCPL.  <u>Id.</u> at 681 ("Inasmuch as the same policy justifications for applying the doctrine to appellants' common law intentional fraud claims support the doctrine's application to appellants' UTPCPL claims, we will affirm the district court's order with respect to these statutory claims.").

The above authorities warrant dismissal of plaintiff's UTPCPL claims for two reasons.  First, <u>Werwinski</u> is directly on point and is controlling authority.  <u>See</u> <u>Wulf</u>, 798 F. Supp.2d at 595-96 ("Despite several cases questioning <u>Werwinski</u>, none have come from the Pennsylvania Supreme Court or the Third Circuit.  Therefore, this court is bound by <u>Werwinski</u>."); <u>Itzkoff v. F</u>

27

& G Realty of New Jersey, Corp., 890 F. Supp. 351, 356 (D. New Jersey 1995) (In determining issues of state law where the state supreme court has not spoken, district courts are to give proper regard to decisions of the intermediate appellate courts but are bound by decisions of the Third Circuit predicting how the state supreme court would rule.). Thus, the claims must be dismissed under Werwinski.

Second, although plaintiff argues that her claims are based upon deceptive demands for additional insurance in excess of the amount required pursuant to law and the mortgage agreement, whether the demands were deceptive depends upon what was required under the mortgage agreement. A number of courts have dismissed claims involving deceptive acts with a similar relationship to a loan agreement pursuant to the economic loss doctrine. See Ferki v. Wells Fargo Bank, 2010 WL 5174406 (E.D. Pa. Dec. 20, 2010) (dismissing a UTPCPL claim based upon a bank's liquidation of stock subsequent to notification of deficiency pursuant to the loan documentation because the "fraudulent representations concerning a party's performance of a contract are interwoven with the terms of the contract." ); Sarsfield v. Citimortgage, Inc., 707 F. Supp.2d 546 (W.D. Pa. 2010) (dismissing homeowners' tort claims against a mortgagee for failing to disclose annual property taxes pre-closing); Wulf, 798 F. Supp.2d 586 (dismissing Plaintiff's UTPCPL claim based upon force-placed flood insurance).

Plaintiff repeatedly was notified that her flood coverage was inadequate under the mortgage agreement. As in Wulf, "[w]hether the lender was permitted to require additional coverage has yet to be determined and requires interpretation of the mortgage, lending further support for the conclusion that the fraud and contract claims are 'inextricably entwined.'" 798 F. Supp. 2d at 597 (quoting Sarsfield, 707 F. Supp.2d at 553). Consequently, defendants' motions to dismiss plaintiff's UTPCPL claims must be granted for this reason as well.

For the reasons set forth above, plaintiff's claims for violation of the RESPA and the UTPCPL will be dismissed. Plaintiff's claim for breach of fiduciary duty will be dismissed. Plaintiff's claim for unjust enrichment against W. F. Bank will be dismissed without prejudice to its reinstatement in the event further proceedings lead to an equitable basis for asserting the claim. Plaintiff's claim for breach of the covenant of good faith and fair dealing will be dismissed as an independent cause of action; but to the extent the breach of good faith claim advances allegations distinct from those in the breach of contract claim, they will be treated as being a part of and augmenting the breach of contract claim. The motions will be denied in all other aspects. An appropriate order will follow.

Date: September 7, 2012

<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc:    Charles G. Frohman, Esquire
       Kai H. Richter, Esquire
       Paul J. Lukas, Esquire
       Rebekah L. Bailey, Esquire
       E. Michelle Drake, Esquire
       Matthew C. Helland, Esquire
       Adam W. Hansen, Esquire
       Daniel B. Huyett, Esquire
       Christopher N. Kelly, Esquire
       Steven J. Adams, Esquire
       Jason A. Risk, Esquire

       (*Via CM/ECF Electronic Mail*)